Note.—See under (1) Workmen's Compensation Acts, C. J. p. 50, §. 42; 26 Cyc. p. 970; anno. 19 A. L. R. 1168; 20 A. L. R. 684; L. R. A. 1916A, 118, 247; L. R. A. 1917D 148; L. R. A. 1918F, 206; 14 R. C. L. pp. 67, 68, 28 R. C. L. p. 762; 3 R. C. L. Supp. pp. 163, 164, 1593. (2) Workmen's Compensation Acts, C. J. pp. 122, 123, § 127; anno. L. R. A. 1917D, 189; 28 R. C. L. 828; 3 R. C. L. Supp. p. 1600; 4 R. C. L. Supp. p. 1872; 5 R. C. L. Supp. p. 1581. (3) Workmen's Compensation Acts, C. J. p. 122, § 127.

**ROXANA PETROLEUM CO. et al. v. GOLDRICK et al.**

No. 15241—Opinion Filed Oct. 13, 1925.

Rehearing Denied Dec. 15, 1925.

(Syllabus.)

1. **Principal and Agent—Infidelity of Agent —Accounting to Principal for Personal Profits Acquired in Agency.**

As a general rule it is a breach of good faith and loyalty to his principal for an agent, while the agency exists so to deal with the subject-matter thereof, or with information acquired during the course of the agency, as to make a profit out of it for himself in excess of his lawful compensation; and if he does so, he may be held as a. trustee and be compelled to account to his principal for all profits or benefits acquired by him in such dealings, and be required to transfer them to his principal upon being reimbursed for his expenditures for the same, unless the principal has consented to or ratified the transaction with knowledge that a benefit or profit would accrue or had accrued to the agent.

2. **Same—Insufficiency of Evidence.**

Record examined, and held, that there is no evidence that the plaintiffs had prior knowledge of, consented to, or ratified the action of the defendants in accepting the commissions sought to be recovered by the plaintiffs.

3. **Contracts—Validity—Certainty as to Details.**

A contract is not void for uncertainty even though it does not enter into all the details with respect to its subject-matter, if, according to its terms, it is sufficiently definite so that it can be ascertained with a reasonable degree of certainty what the parties intended to agree to.

4. **Compromise and Settlement—Consideration.**

Where the amount of a claim is in good faith disputed, and the parties interested therein enter into a compromise agreement, the same is a sufficient consideration to uphold the settlement.

5. **Same—Validity Favored.**

Voluntary settlements between parties in respect to their rights where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, and there are no fraud, misrepresentations, conceal-

ments, or other misleading incidents, are so favored that a settlement of their differences must stand and be enforced although the settlement made by the parties in their agreement might not be that which the court would have decreed to be, had the controversy been brought before it for decision.

### 6. Corporations — Ratification of Officer's Acts by Accepting Benefits.

Although a corporation may not have directly authorized an act which was performed by its president, yet where it accepts and retains the benefits of such an act, it amounts to a ratification, and the company, in so ratifying the action taken, accepts the burdens along with the benefits to be derived.

### 7. Judgment Sustained.

Record examined in this case, and held, that the trial court did not err in submitting the cause to the jury, and there being no substantial error in the record prejudicial to the plaintiffs, the verdict and judgment for the defendants will not be disturbed on appeal.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Roxana Petroleum Company of Oklahoma and Roxana Petroleum Corporation against O. V. Goldrick and W. E. Baker. From a judgment in favor of the defendants, the plaintiffs bring error. Affirmed.

Doerner, Fahey & Young and Lashley & Rambo, for plaintiffs in error.

Randolph, Haver & Shirk and Moss & Owen, for defendants in error.

MASON, J. This action was commenced in the district court of Tulsa county by the plaintiffs in error, Roxana Petroleum Company and Roxana Petroleum Corporation against the defendants in error to recover a certain commission alleged to have been received by the defendants at a time when they were employes of the Roxana Companies, upon the sale of a certain oil and gas lease to said companies. For convenience the parties will hereafter be referred to as they appeared in the trial court.

The case was tried to a jury, and resulted in a judgment in favor of the defendants. Motion for a new trial was overruled, and the plaintiffs appeal.

It appears from the record that in so far as this case is concerned the plaintiff companies are virtually one and the same, and for that reason both companies will be referred to herein as the "Roxana."

The action was brought upon the theory

that when an agent acts for a principal and receives commissions from the other party, they may be recovered from him by his principal. As a general principle of law there can be no question as to the soundness of this rule, both in law and equity. To permit a person to accept commissions under such circumstances would inaugurate such a dangerous conflict between duty and self-interest that the law has wisely prohibited it.

The general rule is announced in 31 Cyc. 1434, as follows:

"As a general rule it is a breach of good faith and loyalty to his principal for an agent, while the agency exists, so to deal with the subject-matter thereof, or with information acquired during the course of the agency, as to make a profit out of it for himself in excess of his lawful compensation; and if he does so, he may be held as a trustee and be compelled to account to his principal for all profits, advantages, rights, or privileges acquired by him in such dealings, whether in performance or in violation of his duties, and be required to transfer them to his principal upon being reimbursed for his expenditures for the same, unless the principal has consented to or ratified the transaction with knowledge that a benefit or profit would accrue or had accrued to the agent. The application of this rule is not affected by the fact that the principal did not suffer any injury by reason of the agent's dealing, or that he in fact obtained a better result; nor by the fact that there is a usage or custom to the contrary."

It is admitted, both in the pleadings and in the testimony, that the defendants received two-thirds of a $35,000 commission paid to its agent by the vendor of certain oil properties located in the Osage Nation, known as the Belmont properties, for negotiating the sale of said properties to the Roxana.

The plaintiffs, therefore, were entitled to recover the same unless the evidence was sufficient to bring this case within one of the exceptions to the general rule as above announced, or unless the defendants were entitled to a judgment upon other defenses pleaded in the case.

Counsel for defendants, in support of the judgment of the trial court in their favor, contend that the case at bar falls within the general exception that the agent may act as an agent of both parties and may receive compensation from both parties where the interests of the two principals are not conflicting, as where the agent has no discretion in reference to the transaction.

In support of this contention counsel for de.endants cite Kondos et al. v. Mouser, 64 Okla. 168, 166 Pac. 707, wherein the following rule is annouced:

"One may act as agent for both parties where the interests of the two principais are not conflicting and loyalty by the agent to one of them is not a breach of his duty to the other, as where the agent exercises no discretion in the matter, but acts merely to bring the parties together, and they themselves settle the terms of the agreement between them."

The duty of the defendants herein as disclosed by the record required the defendants to go further than to merely bring the parties together. The defendants were not merely the agents of both parties, but they were employes of the Roxana, and the record discloses that after the president of the Roxana had been informed that the properties in question were for sale, Goldrick and Baker, as employes of the Roxana, obtained data relative to the properties for their company. Baker testified that he obtained the data on the Belmont property and turned it over to Goldrick; that he went on the Belmont lease in his capacity as a member of the force of the Roxana to get the information as to the well logs, the daily production, and the physical assets of the property, and that such information was secured for the purpose of assisting the officers of the Roxana in deciding the advisability of purchasing said property.

We think it is clear that these reports on the Belmont oil properties were not submitted to the Roxana by the dependents as brokers, but as employes of that company, and therefore the cases cited by counsel for defendants are not applicable to the instant case, and the contention made herein, based on such cases, is without merit.

It is next urged by the defendants that the judgment of the trial courr is correct because the case is governed by the exception to the general rule that the prin lipal cannot recover the commission received by his agent where the principal has consented to or ratified the transaction with knowledge that a benefit or profit would accrue to the agent. This contention is based upon testimony given by the defendants that they and other employes of the Roxana had been connected as stockholders in a number of oil and gas companies with the knowledge and consent of the president of the Roxana, and that during the time they were employed by the Roxana they had received commissions for the sale of oil and gas properties as brokers, and that the president had knowl-

edge of such transactions and consented to them. The record, however, discloses that said companies purchased no leases nor oil properties until after they had been rejected by the Roxana, and that the books of said companies were open at all times to the inspection of the officers of the Roxana. This would indicate that the employes of the Roxana, or the companies in which they were stockholders, were not to do anything that conflicted with the best interests of the Roxana. The defendants admitted that prior to the Belmont sale they never had received a commission on a transaction wherein the Roxana was the purchaser. We have searched the record in vain for any evidence that the Roxana or its president ever consented to or ratified the action of the defendants in taking the commissions involved herein.

It appears that the real defense relied upon by the defendants in the trial court was that, subsequent to the time they received the commissions involved herein, they entered into a compromise agreement whereby the Roxana, acting through its president, renounced all claims to said bonus, and whereby the defendants surrendered certain claims which they contended existed in their favor and against the Roxana. The only evidence as to the making of this compromise agreement was the testimony of each of the defendants, which was emphatically denied by the president of the company. The evidence of the defendants being competent and the issues presented thereby having been found in their favor by the verdict of the jury, we will consider such contract as having been made and discuss the plaintiff's assignments of error directed thereat, based upon questions of law.

The evidence of the defendants relative to the said compromise agreement is, in substance as follows:

"That they had been in the employment of the Roxana since 1912; that Goldrick was head of the land department and that Baker was his assistant; that in 1916, they informed Mr. Gracht, the president of the company, that they had received a better offer and would be compelled to enter the services of another company unless their salaries were increased; that Gracht stated, 'That if we would stay, he would institute a system of bonus; that any buys that we made for the company, if it turned out good, he would give us a bonus proportionate to the manner in which it turned out.' He said: 'Now, you see our Devonian property, we have just bought, that we paid $2,000,000 for, is going to pay us back several times over. Now, if you boys could

dig up something as good as that, I would give you a bonus of $25,000. There may be some larger, and there may be some smaller, but that will give you an idea of the bonuses that I am instituting, and the plan on which you are to work."

The defendants contended that they accepted the contract, and the record discloses that they remained in the employment of the Roxana for a considerable period of time thereafter.

It further appears that the defendant Goldrick held in his name a large number of oil and gas leases belonging to the Roxana companies and located in the states of Texas Kansas, and Oklahoma, and of a value of $2,000,000, or more.

It also appears that several months after the purchase of the Belmont property the president of the company called the defendants into his office and informed them that knowledge had come to him that they had received a commission on said transaction. The defendants admitted that they had, whereupon the president made demand that said commissions be paid over to the Roxana. When they refused, he informed them that they were discharged as employes of said company, and asked Goldrick to assign to the Roxana all the leases and property of said company held in his name. Goldrick, according to his testimony, then raised the question as to the defendants receiving their bonuses under the alleged contract, and the president informed him that the company would not recognize any bonus agreement in view of the circumstances. Goldrick then told the president that he might take his time about assigning said leases to the company. Goldrick further testified that the suggestion was then made that the differences between the company and the defendants be settled by Goldrick and Baker surrendering their claim for bonuses, and by Goldrick transferring the property held in his name to the Roxana, and by the Roxana abandoning its claim for the commissions; that this was agreed to by all parties and Goldrick proceeded to make the transfers to the Roxana, which accepted and still retains the same, although this action was commenced a short time thereafter to recover said commissions from the defendants.

For reversal, the plaintiffs in error contend that said evidence was not sufficient to constitute a defense as against their cause of action, and that the trial court erred in refusing to sustain their demurrer to such evidence and erred in refusing to instruct the jury to return a verdict in favor of the plaintiffs for the full amount sued for.

In support of this contention it is urged that the compromise agreement was not valid and enforceable for the reason that it was executed without a consideration; it being the contention of the plaintiffs that the bonus agreement was too vague and indefinite to constitute a binding and enforceable contract, and that, therefore, the agreement to surrender claims for bonuses thereunder did not constitute any consideration for the compromise agreement.

In our opinion, the evidence of the defendants was sufficient to show a good and sufficient contract for bonuses, and especially so in view of the fact that the defendants relied upon the same and remained in the employment of the plaintiffs and performed services thereunder, the benefits of which the company accepted. The only possible element of uncertainty might be the amount of the bonuses to be paid.

A contract is not void for uncertainty even though it does not enter into all the details with respect to its subject-matter, if, according to its terms, it is sufficiently definite so that it can be ascertained with a reasonable degree of certainty what the parties intended to agree to. Thus tested, the terms of the bonus agreement herein can be readily ascertained. It is true the agreement did not provide in specific terms as to how many dollars the defendants should receive as bonuses, but it did provide upon what leases a bonus should be paid, and it fixed a method whereby the amount of such bonus should be determined; that is, that the Roxana would pay them a $25,000 bonus on property of a similar value as the Devonian properties, and would pay a bonus on other properties in the same proportion.

If the defendants were endeavoring to recover such bonuses in this action, it may be that the evidence herein would be insufficient to establish the amount of their recovery, but in this case we are not interested in the amount which they might have been entitled to recover. It is apparent that the defendants had what appeared to be a bona fide claim against the plaintiffs, and, since the parties themselves have assumed the burden of adjusting their rights, the amount to which the defendants might otherwise have been entitled becomes immaterial.

Universally the law always favors compromises, and it is only in the case of bad faith, fraud, misrepresentation, concealment, or other misleading elements that the com-

promise will be set aside, and no contention is made that any of these entered into the agreement involved in the case at bar. This is the law as to settlement contracts which have not passed beyond the executory stage, and it has multiplied strength where, as here, one party receives the benefit of the settlement and then seeks to repudiate the settlement without restoring the benefits.

In support of their contention that there was no consideration for said agreement, and that the same is void and unenforceable, the plaintiffs cite Duck v. Antle. 5 Okla. 152, wherein the following rule is announced:

"It is sufficient to say that we have found no case and no text-book. which asserts that a contract, the sole inducement for which is the compromise of a foundationless and meritless claim or suit, a claim which has no foundation in either law or fact, and which the party asserting it knew he had no right whatever to assert or maintain and could not establish by a suit, has any consideration to support it."

Such rule, in our opinion, is not applicable to the case at bar, for the reason that the consideration for the compromise agreement was not a meritless or foundationless claim, but was based upon a contract which had been executed by the defendants and under which they were entitled to recover from the company.

When a contract has been executed on one side, the other parties will not be permitted to receive and retain the benefit without paying, unless such action is compelled by some binding rule of law. Elliot on Contracts, vol. 1, section 181.

This court, in the case of Jarecki Mfg. Company v. Cimarron River Oil & Gas Company, 69 Okla. 104, 170 Pac. 252, held:

"Where the amount of a claim is in good faith disputed and the parties interested therein enter into a compromise agreement, the same is a sufficient consideration to uphold the settlement. and the compromise and agreement of settlement thus made constitutes a bar to any further recovery thereon."

This court, in a long line of decisions, also announces the rule as follows:

"Voluntary settlements between parties in respect to their rights. where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights and there are no fraud, misrepresentations. concealments. or other misleading incidents. are so favored that a settlement of their differences must stand and be enforced although the settlement made by the parties in their agreement might not be that which the court would have decreed to be, had the controversy been brought before it for decision." Young v. Stephenson et al., 82 Okla. 239, 200 Pac. 225.

The record in this case shows that a substantial claim was being made by Goldrick and Baker against the Roxana and another was being made by the Roxana against Goldrick and Baker, and, with all the facts concerning both claims in the possession of the duly constituted officers of the Roxana, a settlement agreement was reached and consummated. Goldrick and Baker delivered all the property and leases held in Goldrick's name, of a value of approximately $2,000,000 to the Roxana company and surrendered their right to receive bonuses of such properties and leases as they had secured for the company. Under the rule above announced this certainly constitutes a sufficient consideration for said compromise agreement.

Some contention is made by the plaintiffs in error that Gracht, the president of the Roxana, had no authority to enter into said compromise agreement. After entering into said agreement, the Roxana accepted these conveyances, and failed to pay said bonuses, and now, without any pretense of placing Goldrick and Baker in statu quo, is undertaking to, disregard said settlement agreement and recover the portion of the commission received by them in the sale of the Belmont property. We deem it unnecessary to consider this question further than to say that courts do not permit a party to accept the benefits of a contract and then avoid its detriment by denying the authority of an agent to make it. First National Bank of Muskogee v. Clark, 93 Okla. 23, 219 Pac. 370.

The plaintiffs in error next contend that the compromise agreement was void because it was secured through duress of property. We see no merit in this contention, as the pleadings contain no allegation to that effect, nor is such contention supported by any evidence in the case. The record does disclose that a great deal of property of the Roxana was held in the name of Goldrick, and some of it without any knowledge on his part. There is also some evidence to the effect that a large portion of this property was located in the state of Texas, where the Roxana was not authorized to do business. The taking of these leases in the name of Goldrick was, no doubt, an attempt to evade the laws of Texas, and even if it

had been shown that the Roxana was the real owner, it is doubtful if the company could have succeeded in an action to compel Goldrick to surrender these leases. It is true, however, that Goldrick did testify that he might take his time in transferring said leases to the Roxana if the bonuses above referred to were not paid, but there is no evidence that he refused to assign or transfer said property to the Roxana unless the compromise contract was entered into.

It is next contended that the testimony of the defendants with regard to the compromise agreement is not worthy of belief and should be disregarded by this court. The evidence of the defendants was denied by the president of the company, but the case was tried to a jury, which was the sole judge of the credibility of the witnesses, and there being competent evidence which reasonably tends to support the verdict of the jury, the same will not be disturbed by this court.

It is next contended that the conduct of Goldrick and Baker in taking secret commissions from the vendor in the purchase of the Belmont property deprived them of any rights under the bonus agreement. We have carefully read the cases cited by counsel in support of this contention, and it is apparent that they are not applicable to the case at bar.

It is next urged that the alleged compromise agreement is void under section 5066, C. O. S. 1921, as being a contract having for its object to exempt the defendants from responsibility for their own fraud. A careful reading of said section discloses that it has no application to the contract involved herein.

Counsel also complain of the refusal of the trial court to give certain instructions requested by the plaintiffs, and complain of certain instructions which were given to the jury by the trial court. We have carefully examined all such instructions, and we find that all questions raised have been heretofore passed on in this opinion. Considering the court's instructions as a whole, we think the case was properly and fairly submitted to the jury by the trial court under instructions which submitted the contentions of both parties under the facts and issues in the case.

There was a sharp conflict in the evidence, and the jury took the view of the defendants, and there being competent evidence which reasonably tends to support the verdict of the jury, the same will not be disturbed in this court.

The judgment of the trial court is therefore affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, PHELPS, LESTER, CLARK, and RILEY, JJ., concur. HUNT J., disqualified and not participating.

Note.—See under (1) 2 C. J. pp. 697, 698, §356. (2) 2 C. J. pp. 952, 954, §726. (3) 13 C. J. 269, §60. (4) 12 C. J. p. 324, §17. (5) 12 C. J. pp. 330, §18; 337, §32. (6) 14a C. J. pp. 387, 388, §2241; anno. 15 L. R. A. (N. S.) 693; 21 R. C. L. p. 932; 3 R. C. L. Supp. p. 1204; 4 R. C. L. Supp. p. 1439; 5 R. C. L. Supp. 1179. (7) 4 C. J. p. 1129, §3122.