## OKLAHOMA TITLE CO. et al. v. BURRUS.

No. 22716. April 30, 1935.

Carl W. Gust for plaintiff in error Eufaula Abstract Company.

Turner & Turner and H. B. Parris, for plaintiff in error Oklahoma Title Company.

Clark and Jack Nichols, for defendant in error.

BUSBY, J. This is an action on a promissory note commenced on the 23rd day of January, 1928, by Nina G. Burrus, as plaintiff, against the Oklahoma Title Company a corporation, as defendant. Subsequently the Eufaula Abstract Company, a corporation, was made a party defendant. Plaintiff in her petition as finally amended sought to recover from the above-named defendants the principal sum of $1,276 with interest and attorneys' fees as provided in the note.

The case was tried to a jury in the trial court, resulting in a verdict and judgment in favor of the plaintiff and against both of the defendants for the amount above stated. Both of the defendants have appealed and appear herein as plaintiffs in error. For the purpose of convenience, we shall refer to the parties as they appeared in the court below.

The defendants present their appeal on separate petitions in error. Since the liability, if any, of each of the two defendants arises from different legal principles, which, in their application, require that controlling importance be attached to entirely different facts, we shall treat the liability of the two corporations separately.

We shall first consider the appeal from the standpoint of the Oklahoma Title Company.

The note in question was made payable on demand to the order of plaintiff. It was executed on May 27, 1927, by T. J. Young, who purported to act in behalf of the Oklahoma Title Company. He signed the note "Oklahoma Title Co. by T. J. Young, Secy." The plaintiff averred in her petition that this was a renewal note given to take up the principal and interest due on a note executed to her by the Oklahoma Title Company on or about the first day of June, 1925. She also alleged that this note, executed in June, 1925, was an extension note given in lieu of a note for $1,100 executed and delivered by the Oklahoma Title Company to the plaintiff on the 6th day of June, 1923; that the consideration for the original note was a loan of money for the face amount of the note and that the money loaned had been used by the Oklahoma Title Company to purchase furniture and equipment to be used in furnishing and equipping its office and that said furniture and equipment was so used. She also asserted, in substance, that the act of the agent or purported agent, T. J. Young, in borrowing the money from her had been previously authorized by the defendant corporation and also that it was subsequently ratified by the defendant corporation.

Defendant Oklahoma Title Company presented its case in the trial court on the theory that it neither authorized nor ratified the act of T. J. Young in executing the note in question or any of the previous notes and it neither authorized nor ratified his act in borrowing money from the plaintiff to be used in purchasing furniture and equipment for its office.

At the close of the evidence the learned trial judge submitted the issue to the jury on the question of implied ratification only. The jury was advised, in substance, that the evidence was insufficient to show that T. J. Young had been expressly or impliedly authorized to act in behalf of the company in the transactions above mentioned; that it was also insufficient to show an express ratification. The court then advised the jury that "the question for you to determine in the case is whether or not there was an implied ratification of the acts of T. J. Young in borrowing the money, if he did so borrow it, for the purpose of purchasing said furniture and equipment, in such manner as to bind the Oklahoma Title Company for the repayment of said loan."

Following the above statement of the question, the trial court instructed the jury more specifically on the elements of implied ratification. It is unnecessary to examine the instruction given for the purpose of determining whether or not it was technically correct, since no exception was taken to the same. Defendant Oklahoma Title Company presents its case in this court upon the theory that the evidence was wholly insufficient to support the verdict and judgment. The sufficiency of the evidence was challenged in the proper manner in the trial court.

An examination of the voluminous record in this case discloses that, while there is sharp conflict in the evidence in some particulars and different conclusions could be drawn therefrom, the evidence amply supports the view that the defendant corporation, Oklahoma Title Company, ratified the acts of its purported agent in borrowing money for the purpose of purchasing furniture and in executing the note in question. It appears that the Oklahoma Title Company had conducted an abstract business in the city of Eufaula for a number of years prior to 1927, when it discontinued its business. Its stockholders were T. E. Bratton (also known as Tom Bratton), Lester Clark (also known as L. C. Clark), Mrs. Smock, and T. J. Young. It appears that T. J. Young was in active charge of the affairs of the corporation for a long time prior to the time it discontinued its business in 1927. In fact, during the time of all the transactions herein concerned, he appears to have been the only person who had anything to do with the management of the company. No directors' meetings were held between 1913 and 1927. The other stockholders, however, resided in Eufaula and Mr. Bratton, in particular, made the offices of the company his general headquarters, presumably for the purpose of conducting his individual business.

The testimony shows that in 1923, when the furniture was purchased, there was no money available in the funds of the company for the purpose of purchasing the same and that it could not have been purchased by the company without borrowing money for that purpose. There is testimony in the record showing that T. J. Young, at the time the furniture was purchased, consulted at least two of the other directors concerning the advisability of borrowing money for that purpose and that his suggestion in that respect met with their approval. The testimony also indicates that during the four years that the company remained in business after the furniture was purchased, the other stockholders and especially Mr. Bratton were frequently around the office and knew that the furniture had been purchased. During all of this time, while the company was receiving the benefit of the proceeds of the loan, no objection seems to have been made by any of the stockholders, who, it appeared, were also the officers in the corporation and constituted its board of directors.

The testimony was amply sufficient to show a ratification by the corporation of the act of its managing officer in borrowing the money from the plaintiff and using it for the purpose of purchasing furniture.

The rule announced by this court in the case of First Nat. Bank of Muskogee v. Clark, 93 Okla. 23, 219 P. 370, is applicable. In that case this court said in paragraphs 1 and 2 of the syllabus:

"Although a party may not have directly authorized an act which was performed, yet, where such party accepts the benefits of the act, it amounts to a ratification, and the party so ratifying the action taken accepts the burdens along with the benefits to be derived.

"It is not essential to a ratification that the principal have full knowledge of the conditions attached to the agreement made by one acting as agent without authority, but where the benefits of the unauthorized act are accepted without knowledge, and are retained after having knowledge, or after the happening of such events as would place a reasonably prudent person on inquiry which would discover full knowledge, ratification is accomplished and the principal is bound."

See, also, U. S. F. & G. Co. v. Shirk et al., 20 Okla. 576, 95 P. 218; Roxana Petroleum Co. et al. v. Goldrick et al., 113 Okla. 298, 242 P. 228; Park Addition Co. v. Bryan et al., 102 Okla. 205, 228 P. 959; Fant v. Campbell, 8 Okla. 586, 58 P. 741; see, also, section 5013, C. O. S. 1921.

The instructions of the court in this respect were fair to the defendant, and the evidence, though conflicting, supports the verdict of the jury and judgment of the court.

We now address ourselves to the liability of the defendant Eufaula Abstract Company. The trial court advised the jury as a matter of law that by reason of the facts as established by the evidence in this case, the liability of the defendant Eufaula Abstract Company was the same as that of the defendant Oklahoma Title Company, and that if the Oklahoma Title Company should be determined to be liable on the note, it would follow, as a matter of law, that the Eufaula Abstract Company was also liable. It is the contention of the defendant that this instruction was wrong and that the trial court should have advised the jury as a matter of law to return a verdict in favor of the Eufaula Abstract Company.

It is evident from an examination of the record that the theory of the trial court

in this connection was that the Eufaula Abstract Company was in reality a mere continuation of the Oklahoma Title Company.

In order to determine the correctness of the decision of the trial court in this respect, it is necessary to examine the pertinent facts in connection therewith.

The facts present a striking example of financial manipulation. As previously observed in this opinion, the Oklahoma Title Company was a corporation with an authorized capital stock of $5,000, which capital stock was held by four stockholders, namely, T. E. Bratton, Lester Clark, Mrs. Smock, and T. J. Young. This corporation was engaged in conducting an abstract business in the city of Eufaula, having as assets its office furniture and equipment and the good will of the business established by it. The Eufaula Abstract Company was a corporation with an authorized capital stock of $2,500. It was organized in the latter part of the year 1927, and from the time of its organization conducted an abstract business in the same city and in the same location that was formerly occupied by the Oklahoma Title Company. It also used the same furniture and fixtures, the ownership of which it claimed. In acquiring the furniture and fixtures and other assets of the Oklahoma Title Company no consideration whatever was paid to the Oklahoma Title Company. Neither did the stockholders of the Eufaula Abstract Company, in order to acquire stock therein, pay anything to the Eufaula Abstract Company. This feat of financial reorganization was accomplished in the following manner: T. E. Bratton and Lester Clark were issued stock in the new corporation in lieu of their stock in the old corporation at the rate of approximately 50 cents on the dollar. Mrs. Smock sold her stock in the old corporation to one J. R. Doss, who acquired, in lieu thereof, stock in the new corporation. T. J. Young, who had been one of the principal stockholders in the old corporation, had pledged his stock to a bank to secure the payment of a note. One O. K. Johnson assumed the payment of Young's note to the bank, and, in consideration thereof, received a bill of sale to the furniture and assets of the Oklahoma Title Company. It is important to note that while the bill of sale recited a consideration of $2,500, no money whatever was paid to the Oklahoma Title Company for its assets. The bank merely re-

ceived a new debtor on the obligation due it from Young. In connection with this transaction O. K. Johnson agreed to reorganize the Oklahoma Title Company and create a new corporation. J. R. Doss then entered the financial field. He assumed the obligation of Johnson to the bank. In consideration of this he received 1,297 shares of stock in the new corporation (Eufaula Abstract Company), which stock he pledged to the bank in lieu of the Young stock in the old corporation to secure his obligation. S. P. Doss, a relative to J. R. Doss, received 100 shares of stock without any consideration, and O. K. Johnson and Edith Hedges received one share of stock each in the new corporation. these shares being of the par value of $1. Thus, while the stockholders in the new corporation were not identical with the stockholders in the old corporation, it is apparent that they in most instances acquired their stock by directly or indirectly surrendering stock in the old corporation, although the method used in the case of J. R. Doss was somewhat involved and roundabout. O. K. Johnson and Edith Hedges were merely nominal stockholders. In effect, the stockholders in the new corporation were the same as those in the old corporation, J. R. Doss, in an indirect manner, having, in effect, acquired the stock of T. J. Young, who thereafter ceased to be interested in the corporation. The only practical change that was made was that the bank substituted J. R. Doss for T. J. Young as its debtor. No consideration of any kind or character was ever paid by the new corporation to the old corporation in consideration for acquiring the assets of the latter. The old corporation ceased to do business and the new corporation commenced operating the same business with the same assets.

The trial court properly held that the new corporation was a mere continuation of the old organization and as such was liable for its debts. In connection with the law applicable to this situation it should be observed that the mere reorganization of a corporation does not, in itself, make the new company liable for the old company's debts, but where the new corporation has acquired the assets of the old corporation under circumstances that amount to a conversion of the corporate property, the new corporation becomes liable for the debts of the old corporation on the trust fund theory to the extent of the value of the property acquired by it.

Moreover, when the circumstances sur-

rounding the transaction show that the new corporation was created for the purpose of succeeding to the business and acquiring the property of the old corporation and the manner of acquiring the business and property and the circumstances surrounding the transaction are of such a character as to warrant the conclusion that it is a mere continuation of the former corporation, the new corporation becomes liable for the debts of the old corporation at law as distinguished from the liability recognized in equity on the trust fund theory. See 14 A C. J. page 1050; Annotation in 15 A. L. R. page 1112, at page 1117. See, also, Skirvin Operating Co. v. Southwestern Elec. Co., 71 Okla. 25, 174 P. 1069, 15 A. L. R. 1104, in which the applicable authorities were carefully reviewed by this court.

In the case of Burkholder v. Okmulgee Coal Co. et al., 82 Okla. 80, 196 P. 679, we stated the applicable rule of law in paragraph 2 of the syllabus in the following language:

"The general rule is that in order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debts; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact."

To the same effect see Spring Creek Oil Corp. v. Dillman, 90 Okla. 129, 215 P. 1053. The holding of the trial court that the Eufaula Abstract Company was a mere continuation of the Oklahoma Title Company, and, as such, was liable for the debts of the latter corporation, is amply sustained by the evidence in this case when viewed in the light of the foregoing authorities.

The remaining assignments of error urged in the briefs relate to the liability of both of the corporations. Defendants herein filed a supplemental motion for new trial based upon the grounds of newly discovered evidence. The motion was supported by affidavits setting forth the nature and character of the evidence alleged to have been newly discovered. The plaintiff filed a response to this motion, supporting the same by affidavits. It will be unnecessary for us to review in detail the alleged newly discovered evidence. The response of plaintiff established that the so-called newly di - covered evidence was known to one of the attorneys for the defendants before the time of trial. The trial court is justified in denying a motion for new trial on the ground of newly discovered evidence when it appears either that such evidence was known to the moving party at the time of trial or that such party failed to exerc se reasonable diligence to secure such evidence. See Hobbs v. Smith et al., 27 Okla. 830, 115 P. 347; Bank of Chelsea v. School Dist. No. 1, 62 Okla. 185, 162 P. 809; First Nat. Bank of Taloga et al. v. Farmers State Guaranty Bank et al., 62 Okla. 30, 161 P. 1063; McCants v. Thompson, 27 Okla. 706, 115 P. 600. Furthermore, the motion for new trial based upon the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and its decision with respect to the same will not be disturbed on appeal unless an abuse of discretion appears. See Summers v. Williams et al., 128 Okla. 9, 260 P. 1064. The record in this case does not disclose an abuse of discretion of the trial court in denying the supplemental motion for new trial.

The defendants also urge that the trial court erred in admitting testimony to the effect that the plaintiff made the loan of money involved in this case through an agent for the reason that in her pleadings she set forth the act of loaning the money as though it had been personally performed by her. Defendants say that this evidence was a variance with the pleading. There is no merit in this contention. It is fundamental law that in an action by or against a principal based upon a contract executed through an agent, the transaction may be pleaded as though performed by the principal without disclosing the fact of agency. See 2 C. J. 904. See, also, Southern Surety Co. v. Gilkey-Duff Hardware Co., 166 Okla. 84, 26 P. (2d) 144.

There are other arguments made in the brief which we deem unnecessary to discuss in this opinion.

The judgment of the trial court is affirmed.

McNEILL, C. J., and PHELPS, CORN and GIBSON, JJ., concur.