**B & K DISTRIBUTING, INC.,**
**Plaintiff-Appellee,**

v.

**DRAKE BUILDING CORPORATION, a Colorado corporation, Philip C. Drake, Margie L. Drake, and Michelle C. Drake, individually and as Officers, Directors and Shareholders of Drake Building Corporation, Defendants-Appellants,**

and

**Mid-Central Constructors, Inc., a defunct Colorado corporation, Paul J. Pfeifer, and Earl G. Depner, individually and as Officers, Directors and Shareholders of Mid-Central Constructors, Inc., Defendants.**

No. 80CA0188.

Colorado Court of Appeals,
Div. I.

June 3, 1982.

Rehearing Denied July 1, 1982.

Certiorari Denied Nov. 15, 1982.

S. Macon Cowles, Steamboat Springs, for plaintiff-appellee.

Sterling & Simon, P.C., Kevin D. Allen, Denver, for defendants-appellants.

COYTE, Judge.

Defendants appeal a judgment entered by the trial court piercing the corporate veil of defendant, Mid-Central Constructors, Inc., and finding defendant Philip C. Drake (Drake), and Drake Building Corporation, liable for certain debts which resulted in liens filed against plaintiff's building. Drake and his wife, Margie L. Drake, also appeal from the judgment of the trial court dismissing their counterclaim filed against plaintiff for malicious prosecution. We affirm.

In 1976 Mid-Central entered into a contract with plaintiff to construct a prefabricated steel building as a storage facility and office. In accordance with the building contract, Mid-Central was required to send lien waivers with requests for payment as work progressed. Drake was an officer and director of Mid-Central and was in charge of estimating, supervising construction, and authorizing payment of bills.

Around the first part of December 1976, defendant Paul J. Pfeifer, president of Mid-Central, advised Drake that the company was insolvent and could not continue in business. Drake then prepared minutes of corporate meetings so that it would show that he had previously resigned as a director of the company in the spring of 1976. He assigned to himself all of the interest in certain contracts entered into by the company with third persons. He paid himself and his wife's final wages by assigning all of the company tools and equipment to himself.

Drake then incorporated his own business named Drake Building Corporation. The assets of his new corporation consisted of $2,000 advanced from his savings account and the tools and equipment acquired from Mid-Central. He contracted through his new company to perform the contracts which he had renegotiated after they were assigned to him by Mid-Central.

When the president of plaintiff corporation, one Kaminski, became aware that there were liens for labor and material against the building, he filed suit against all defendants. Default judgment was entered against Mid-Central. Service was never obtained against defendant Depner. Pfeifer took bankruptcy and proceedings were stayed against him.

The trial court entered judgment against Drake, individually, and against the Drake Building Corporation in the amount of $46,-468.20 together with interest from the date of the judgment.

Drake first contends that since he was only an officer and director and not a stockholder in Mid-Central, the trial court erred in imposing liability upon him by use of the "alter ego" theory. We do not determine whether the alter ego theory could apply since, regardless of any liability which might attach under an alter ego theory, Drake, as an officer of the corporation, is liable for damages if he committed a tort against plaintiff. *Snowden v. Taggart,* 91 Colo. 525, 17 P.2d 305 (1932). As the *Snowden* court stated:

" 'To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant

and wanton injuries by agents of insolvent and irresponsible corporations.' "

Here, following Mid-Central's request for payment of funds from plaintiff, Drake was called by Kaminski in mid-December and was questioned as to whether there were any company problems. At that time, Drake had already assigned all the company contracts and property to himself. Drake assured Kaminski that there were no problems even though at that time he knew Mid-Central was going out of business and that there were many unpaid lienable bills on plaintiff's building. Also, Drake had participated in leading Kaminski to believe a bond was being obtained, as required by the contract, when none was in fact obtainable. Further, although Drake did furnish lien waivers when payments were requested, they only waived lien rights of Mid-Central for work performed for the prior payment, not for the requested payment. No lien waivers were furnished for subcontractors. After this questioning, the requested funds were forwarded to Drake and disbursed as directed by Pfeifer, but none of the funds were used to pay bills for lienable labor or material used in the construction of the building.

> Furthermore, as the trial court found: "Drake knew the lien waivers only waived the rights of Mid Central and not the subcontractors. It is also clear that at the time of submitting the lien waivers to B & K, Drake knew that he did not have individual lien waivers from the subcontractors and in December, 1976, Drake knew that Mid Central Constructors would not have the ability to pay all the subcontractors and provide the individual lien waivers indicated in his letter of October 27, 1976."

Since the evidence supports the trial court's finding that Drake's actions were fraudulent, the trial court correctly ruled that Drake must respond in the amount of plaintiff's damages, and any misapplication of the alter ego doctrine to Drake is without significance.

■ Drake also contends that the trial court erred in entering judgment against Drake Building Corporation for the amount of plaintiff's damages. We disagree.

Drake and his wife both knew that Mid-Central was insolvent at the time they transferred the assets of Mid-Central to Drake. He owed a duty to plaintiff not to divest corporate property for his own benefit and thereby defeat the plaintiff's claim for the amount due the unpaid sub-contractors. *Crowley v. Green*, 148 Colo. 142, 365 P.2d 230 (1961); *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367 (1977). As stated in *Oklahoma Title Co. v. Burrus*, 172 Okl. 94, 44 P.2d 852 (1935):

> "Moreover, when the circumstances surrounding the transaction show that the new corporation was created for the purpose of succeeding to the business and acquiring the property of the old corporation and the manner of acquiring the business and property and the circumstances surrounding the transaction are of such a character as to warrant the conclusion that it is a mere continuation of the former corporation, the new corporation becomes liable for the debts of the old corporation at law as distinguished from the liability recognized in equity on the trust fund theory."

Since Drake Building Corporation acquired the assets of Mid-Central through the improper actions of Drake, it also became liable for plaintiff's loss. *See Ruiz v. Ex-Cello Corporation*, Colo.App., 653 P.2d 415 (1982).

■ Drakes next contend that the trial court erred in dismissing their claim for malicious prosecution. We disagree.

On January 19, 1977, Kaminski, acting in his capacity as president of B & K, contacted the district attorney concerning his dealings with Mid-Central and Drake. He was told to reduce his complaint to writing. The facts as set forth in the letter were as he understood them and were written on the advice of counsel. The facts disclosed that Mid-Central had received a check from plaintiff in the amount of $34,975 which Pfeifer had endorsed over to Philip C. Drake and instructed Drake to open an

account and deposit the funds under his name so as to thwart the collection of an account by a judgment creditor against Pfeifer. Drake deposited this money in a personal account, but the funds were ultimately spent for Mid-Central purposes.

The district attorney investigated the matter and subsequently, Pfeifer, Philip C. Drake, and Margie L. Drake were charged with theft and conspiracy. Ultimately, Pfeifer, entered into a plea agreement and pled guilty to one count of the information. All charges were dropped against the Drakes. The Drakes then filed a counterclaim against plaintiff, alleging malicious prosecution.

As stated in *Montgomery Ward & Co. v. Pherson,* 129 Colo. 502, 272 P.2d 643 (1954):

"The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution."

. . . .

" '[I]f in addition to his own belief a defendant proves that before commencing the prosecution of the action alleged to be malicious he sought the legal advice of an officer elected by the people to prosecute offenders against laws and in good faith fully and fairly disclosed to that officer all of the information he possessed and was then advised that a crime had been committed and the prosecution is based upon a complaint prepared by that officer he has made out a complete defense to the action ... however erroneous the advice may have been ....' "

We agree with the trial court that probable cause existed to file the criminal action against the Drakes. Hence, the trial court properly dismissed the Drakes' claim for malicious prosecution.

Judgments affirmed.

PIERCE and SMITH, JJ., concur.