This appeal by the defendants, from an adverse judgment based on a jury verdict in a wrongful death case, raises the following issues: Whether the trial court erred 1) in denying Clardy Realty, Inc.'s motion for directed verdict on the grounds of insufficiency of the evidence and the inapplicability of the "successor corporation liability" doctrine; 2) in denying the defendants' constitutional challenge to Alabama's punitive damages award in wrongful death cases; and 3) in rejecting the defendants' post-judgment motion for a remittitur on non-constitutional grounds. We affirm.
 Background Facts and Statement of the Case
Thomas Eugene Clardy and James K. Kervin were racing their automobiles late one evening. In an attempt to pass, Clardy swung into the opposite lane and struck a car being driven in the opposite direction by Norma Hoffmann, a 16-year-old female. Both Clardy and Hoffman were killed.
Clardy owned a real estate proprietorship called Clardy Realty. Following Clardy's death, Debby Clardy, the widow of Thomas Eugene Clardy, incorporated Clardy Realty. Mrs. Clardy was also named the executrix of her late husband's estate.
Originally, Martha Hoffmann Sanders, Norma's mother, filed a two-count complaint under Ala. Code 1975, § 6-5-391, against Mrs. Clardy, as the executrix of *Page 1059 
Clardy's estate, and against Kervin, alleging negligence and wantonness. Later, Mrs. Sanders amended her complaint to add as a defendant Clardy Realty, Inc., alleging that Clardy was acting within the scope of his authority at the time of the accident, and to add Kervin's father, under a theory of negligent entrustment. Kervin had received five speeding tickets in a two-year period before the accident, and had also been drinking that night.
The jury returned a verdict in favor of Kervin's father, but against the other defendants in the amount of $2.75 million in punitive damages. Judgment was entered in accordance with the verdict. The trial judge conducted an extensive post-trial evidentiary hearing and issued a "Hammond order"[1] setting forth the factors used in determining that the verdict was not excessive.
 The Statement of the Facts
The following facts are undisputed: 1) Clardy had a blood alcohol level of .21% at the time of the accident; 2) Clardy was racing his truck with the car driven by Kervin; 3) Clardy was driving approximately 80 mph; and 4) Clardy was in Hoffman's lane when he struck her car head-on.
Other facts (taken from the evidence as viewed in a light most favorable to the plaintiff) are as follows: Clardy left his house at about 11:00 P.M. on the night of the accident. There is a dispute over where he was going, but there was testimony to the effect that he was going to check on some of his rental property. A "Clardy Realty" sign was in Clardy's truck at the time of the accident, and the accident occurred near some property owned by Clardy. As previously stated, all of the testimony, which included that of several eyewitnesses, showed that the accident was entirely the combined and concurring fault of Clardy and Kervin. The accident occurred between 1:00 and 1:30 A.M. on August 30, 1986.
On October 17, 1986, Mrs. Clardy incorporated her husband's business under the name Clardy Realty, Inc. She testified that she did so on the advice of her accountant and lawyer, and not in response to the litigation arising from the accident. According to Mrs. Clardy, the assets and liabilities of Clardy Realty were assumed by Clardy Realty, Inc. No consideration passed between the estate of Clardy and Clardy Realty, Inc. The location, manner of operation, and personnel of Clardy Realty remained the same following the incorporation. The only major change that occurred was Mrs. Clardy's becoming the licensed broker for the corporation, the position her husband had held in the proprietorship.
 I. The Insufficiency-of-the-Evidence Issue
Under Clardy Realty, Inc.'s first allegation of error, it poses the following propositions: "A. Speculative evidence cannot support the verdict against Clardy Realty, Inc.; B. Theories of successor corporation liability are not applicable to impose liability on Clardy Realty, Inc.; and C. The trial court's erroneous charge to the jury concerning the presumption of agency by the owner of the vehicle constitutes reversible error."[2] As a premise for its "insufficiency" argument, Clardy Realty, Inc., contends that the plaintiff failed to meet her burden of making a prima facie showing that Clardy was on business for the proprietorship at the time of the accident. This argument misperceives the relationship between Clardy as an individual, and Clardy as the sole proprietor of Clardy Realty. Whether Clardy, at the time of the accident, was on business for Clardy Realty is of no legal consequence as to the liability of either Clardy's estate or Clardy Realty, Inc., under the successor liability doctrine. Clardy the individual and Clardy Realty, a sole proprietorship, are but a single legal *Page 1060 
entity; and the two separate capacities (Clardy as an individual, and Clardy as a sole proprietor) can not be separated into two legal entities for the purpose of testing Clardy Realty, Inc.'s liability as a successor in interest to the liabilities of Clardy's estate.
 II. The Successor Liability Issue
The failure of Clardy Realty, Inc.'s respondent superior
argument, however, does not answer the ultimate question concerning the application of the "successor corporation liability" theory. Under this prong of its argument, Clardy Realty, Inc., contends that it could not legally succeed to the debts and obligations of Clardy Realty, because the proprietorship ceased to exist upon Clardy's death and before Clardy Realty, Inc., came into existence; and, further, that the plaintiff did not seek to substitute Clardy Realty, Inc., for Clardy's estate, but sued Clardy Realty, Inc., as anadditional defendant, thus impermissibly enhancing the plaintiff's award of punitive damages.
Clardy Realty, Inc.'s first contention is to the effect that there could be no continuity of operations due to the break in time between Clardy's death and Clardy Realty, Inc.'s legal existence. This argument fails, both factually and legally. Factually, the time span between Clardy's death and Clardy Realty, Inc.'s incorporation was far too brief to allow any appreciable change in the business operations of the firm; and the evidence of record does not support a finding of any material change in the firm's operation. Legally, the test of the doctrine's application is not so tenuous or restrictive as to depend exclusively upon the "continuity of operations" element.
The requisite alternative elements of the "successor corporation liability" theory are stated in Andrews v. John E.Smith's Sons Co., 369 So.2d 781 (Ala. 1979):
 "As a general rule, where one company sells or otherwise transfers all its assets to another company, the transferee is not liable for the debts and liabilities of the transferor unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor. 15 Fletcher, Cyclopedia Corporations § 7122 (Perm. ed. 1973); 19 Am.Jur.2d § 1546."
369 So.2d at 785. Under appropriate instructions, and the facts disclosed of record, the jury was authorized to conclude that one or more of these elements was present, and, thus, that Clardy Realty, Inc., succeeded to the liabilities of Clardy Realty.
The second aspect of Clardy Realty, Inc.'s argument (the recovery against both the estate and Clardy Realty, Inc.) is more difficult of resolution, and, indeed, contains a ring of logic. Ordinarily, the application of the "successor liability doctrine" does not contemplate that both entities will be held liable for a single obligation arising from a single culpable act or other legal obligation. To be sure, if the doctrine is held to apply, the successor entity is ordinarily fully chargeable with the liability, but not the predecessor entity.
The parties agree that this issue has not been directly addressed in the Alabama cases. Authorities from other jurisdictions have been cited by the parties and thus consulted by us in our effort to resolve this issue. See Tift v. ForageKing Industries, Inc., 108 Wis.2d 72, 322 N.W.2d 14 (1982);Plaza Express Co. v. Middle State Motor Freight, Inc., 40 Ill. App.2d 117, 189 N.E.2d 382, n. 4 (1963); Jones v. Eppler,266 P.2d 451, n. 9, 10 (Okla. 1953); and Acorn Lumber Co. v.Friedlander Box Co., 240 Ill. App. 425 (1926). Specifically, we adopt the rationales and the holdings of the Tift and Jones
decisions. The Tift court held:
 "It should be emphasized that the corporate rule that exempts a successor company from the liabilities of its predecessor when it has purchased the assets *Page 1061 
of the predecessor is subject to . . . four exceptions. . . .
 "Two of these exceptions, the first and the fourth, are unrelated to the problem at hand, for where there is an express or implied assumption of the selling corporation's liabilities — tort, contract, or both — the problem is obviated; and where the transaction is fraudulent, protection is afforded under the law of fraudulent conveyances. The other two 'exceptions' are, however, relevant to our discussion of the purposes and policies behind causes of action for tort. These exceptions are not really exceptions at all, for when applicable they swallow up the rule of nonliability.
 "The second exception is that there is liability when the transaction amounts to a consolidation or merger (de facto or otherwise) of the purchaser and seller corporations. The third 'exception' exists when the purchaser corporation is merely a continuation of the seller corporation. When viewed in the context of a tort caused by a defective product, these two 'exceptions' merely recite that, where either one is applicable, there is 'identity,' because in substance the successor business organization which the plaintiff sues is, despite organizational metamorphosis, the same [entity] which caused his injury.
 "As (Fletcher, Cyclopedia Corporations, Vol. 15, sec. 7122, p. 188,] points out, the rule and its exceptions were designed initially to protect contract or quasi-contract creditors of a dissolved business organization and, hence, as a general group, all four exceptions are irrelevant to tort except as to the extent that the second and third exceptions are indicia of 'identity.' These exceptions are declaratory of tests to be applied to encourage 'piercing the corporate veil' and to look to the substance and effect of business transformations or reorganizations to determine whether the original organization continues to have life or identity in a subsequent and existing business organization.
 "They can be viewed also as tests for 'privity' with the subsequent organization even if the dealings were only between the original business organization and the ultimate consumer or the party injured.
 "Exceptions two and three to the corporate rule demonstrate that, when it is the same business organization that one is dealing with, whether it be by consolidation, merger, or continuation, liability may be enforced. These are tests of 'identity.' Suit is possible in these circumstances, because there would be privity with the actual seller or manufacturer, i.e., the exceptions are guidelines to determine under what circumstances the original entity continues to exist, albeit in an altered form.
 "By applying these rules of corporate law, it is apparent, either by application of exception two or three that the present corporation is the same as the prior organization, i.e., it has substantially the same identity although transformed by merger, consolidation, etc. Hence, an injured party who dealt with the predecessor organization could sue the successor. Where a defendant has retained the same identity, though perhaps not the same name or form of organization, the element of privity is satisfied.
 "If there is business succession, then in effect the plaintiff is suing the 'same' business that [committed] the original [culpable conduct]. Under such a state of facts, a novel or unusual problem is not presented. A court merely need determine that the defendant, despite business transformations, is substantially the same as the original [entity]. This is the application of existing corporate law; and such law governs the decision in this case, because it is clear that there is identity between the original [entity] and the present [entity].
 "It should be emphasized, however, that the possible fixing of liability on the [successor entity] does not necessarily exonerate the [predecessor entity]. The present organization may well have the right of indemnity. What is important, however, is that the plaintiff may seek *Page 1062 
recourse against either. Where the burden of payment eventually falls [as] between an existing organization . . . and [the present] organization that is a continuation of the former ought not to be a concern of an injured plaintiff."
108 Wis.2d at 77-80, 322 N.W.2d at 16-17.
The Jones court wrote:
 "It is urged that the judgment against the defendant, L.C. Jones Trucking Company, a corporation, is void for the reason that the corporation was not in existence at the time of plaintiff's injuries. The record discloses that the corporate defendant was organized and incorporated October 9, 1948; that the accident occurred on June 14, 1948; that the corporation took over the individual business and all the assets of L.C. Jones d/b/a L.C. Jones Trucking Co., without consideration other than corporate stock issued to the individuals, including the use of the franchises or motor carrier permits formerly issued to L.C. Jones, individually, and the defendant L.C. Jones Trucking Company, a corporation, operated under them, and by an added endorsement on its policy, the public liability insurance carrier became the insurance carrier of the successor corporation; that all the assets of the new corporation were derived from the old L.C. Jones Trucking Company and that the new corporation remained under the same management; that the corporate president and manager is L.C. Jones, former owner of the old L.C. Jones Trucking Company; that, in fact, the business was continued in the same manner as before the incorporation and the new corporation was merely a continuation of its predecessor. However, it is contended, by the defendants, that we are not dealing with the merger of corporations, but are concerned with a case wherein an individual was engaged in the trucking business; that later the individual and others organized a corporation to conduct the same business; that under these circumstances the corporation does not become liable for an unliquidated tort arising before the corporation was organized. Citing Burkholder v. Okmulgee Coal Co., 82 Okla. 80, 196 P. 679 [(1921)] and other cases of similar import in support of this contention.
 "We disagree. The mere fact that a corporation is organized to take over a business formerly conducted by a firm or individual is not of itself sufficient to render it liable for a debt incurred by such firm or individual in conducting such business. But where, as in the instant case, it appears that the property is simply transferred to the corporation without consideration other than corporate stock issued to the individuals and the business is but a continuation of the old and is conducted as before, under the same name and management, the corporation, so formed and operated, will be liable for the existing debts of the unincorporated entity, as it will be presumed that such debts were assumed. 13 Am. Jur., Corporations, Secs. 1248 and 1249. St. Clair Lime Co. v. Ada Lime Co., 196 Okla. 29, 162 P.2d 547
[(1945)]; S. J. Supply Co. v. Warren, 191 Okla. 683, 133 P.2d 201 [(1943)]; Oklahoma Title Co. v. Burrus, 172 Okla. 94, 44 P.2d 852, 853 [(1935)], and cases cited therein; Fletcher on Corporations, Vol. 8, Sec. 4014; Thompson on Corporations, 4th Ed., Vol. 4, Sec. 2436 et seq.
 "While we have passed upon the question of assumption of debts (see above cases) this is the first occasion for determining such corporation entity's liability for torts of its predecessor. A tort liability of an individual, partnership or corporation is an indebtedness which may be enforced against a corporation which takes over the business and assets of its predecessor under the circumstances outlined above, as the assumption of the liabilities of a predecessor includes tort liabilities. 13 Am.Jur., Corporations, Sec. 1253; Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 [(1941)]."
266 P.2d at 457-58.
Here, the facts, when tested against the rationales ofTift and Jones, defy any conclusion save one: that Clardy Realty, Inc., became the successor corporation to the *Page 1063 
interests and liabilities of Clardy Realty, a sole proprietorship.
 III. The Damages Issue A. Constitutional Grounds
The trial court entered the following supplementary order denying the defendants' post-judgment motions:
"ORDER
 "This court having previously conducted a 'Hammond' hearing on March 31, 1988, and having previously entered its ORDER denying the post-trial motion filed by Defendants Clardy Realty, Inc., and Debby D. Clardy, Executrix of the Estate of Thomas Eugene Clardy, now states for the record the factors considered in denying said Motion pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
 "This court has considered the combined culpability of the Defendants, the desirability of discouraging others from similar conduct, the impact of the judgment on the parties and innocent third persons, and has also considered the necessity of preventing unnecessary homicides, especially in cases where the facts and circumstances are similar to those that took the life of Norma Hoffmann and Thomas Eugene Clardy.
 "Even though the award of 2.75 million dollars for the Plaintiff is a large sum of money, it is not excessive as a matter of law. The Alabama Supreme Court has recently upheld an award of 3.5 million dollars in a wrongful death action where the combined culpability of the defendants appears to have been less than in the instant case. Blackbelt Wood Co. v. Sessions, 514 So.2d 1249
(Ala. 1986).
 "The jury's verdict is clothed with constitutional protection, as set forth in Article I, Section 11, Constitution of 1901. Unless the verdict is flawed, thereby losing its constitutional protection, this court has no authority to interfere with the jury's verdict. There was no evidence that the verdict in this case was based on bias, passion, prejudice, corruption or other improper motive. The jury was composed of male and female, black and white, young and elderly. The jurors acted responsibly and conscientiously throughout a well-tried case.' This court had the opportunity to observe the parties, their counsel, a significant number of witnesses, and a substantial number of documents, including photographs, maps, and a [video tape] of the scene. The court also had the opportunity to observe the reaction of the jurors to the evidence and to the court's instructions. The jury's verdict for 2.75 million dollars was consistent with the evidence and the court's instructions, and, after due consideration, the motion of the Defendants was previously DENIED the 11th day of May, 1988.
"Dated this the 13th day of May, 1988.
 "/s/ "JAMES T. GULLAGE "Circuit Court"
After reviewing the trial court's Hammond order and the arguments of counsel, we find no constitutional basis for reversal. See Industrial Chemical Fiberglass Corp. v.Chandler, 547 So.2d 812 (Ala. 1989) (on rehearing); and CentralAlabama Electric Cooperative v. Tapley, 546 So.2d 371 (Ala. 1989).
 B. Non-Constitutional Grounds
We have carefully reviewed the entire record and considered the gravity of the wrong in light of the trial judge's post-judgment findings and conclusions, as well as other judgments affirmed by this Court in wrongful death cases, and we find no basis for reversal on non-constitutional grounds. See Alabama Power Co. v. Capps, 519 So.2d 1328 (Ala. 1988), appeal dismissed, ___ U.S. ___, 108 S.Ct. 1723, 100 L.Ed.2d 188
(1988); Black Belt Wood Co. v. Sessions, 514 So.2d 1249 (Ala. 1986); Alabama Power Co. v. Cantrell, 507 So.2d 1295 (Ala. 1986), appeal dismissed, ___ U.S. ___, 108 S.Ct. 2008,100 L.Ed.2d 596 (1988); General Motors Corp. v. Edwards,482 So.2d 1176 (Ala. 1985); American Pioneer Life Ins. Co. v. Sandlin,470 So.2d 657 (Ala. 1985); and National Security *Page 1064 Fire Casualty Co. v. Bowen, 447 So.2d 133 (Ala. 1983).
AFFIRMED.
ALMON, SHORES and ADAMS, JJ., concur.
MADDOX, J., concurs as to parts II and III, and concurs in the result as to part I.
HOUSTON, J., concurs as to part I, and concurs in the result as to parts II and III.
 ON APPLICATION FOR REHEARING
JONES, Justice.
APPLICATION OVERRULED.
ALMON, SHORES and ADAMS, JJ., concur.
MADDOX and HOUSTON, JJ., concur specially.
[1] See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
[2] Because the issue concerning the trial court's jury instruction on the presumption of agency was not preserved for review pursuant to Rule 51, A.R.Civ.P., we will not address this allegation of error.