Andrews appeals from a summary judgment granted in favor of the defendant, Hobam, Inc., also referred to as John E. Smith's Sons Co., a division of Hobam, Inc. We affirm.
Andrews, an employee of Conecuh Quick Freeze, had his right arm amputated below the elbow following an accident at his place of employment in May, 1976. He was stuffing ground beef into a commercial meat grinder with his hand when it was caught and pulled into the grinding mechanism.
Suit was filed against "John E. Smith's Sons Co., a division of Hobam, Inc., a corporation" with service on Hobam, Inc. Count One was based on the Alabama Extended Manufacturer's Liability Doctrine and Count Two (which was struck) sounded in warranty. Here we are concerned only with the propriety of summary judgment for the defendant on Count One, which reads in its entirety:
"COMPLAINT
 "This is a third party action under Title 26, Section 312, Code of Alabama 1940 *Page 783 
(recompiled 1958) brought under the Alabama Extended Manufacturer's Liability Doctrine and also for breach of warranties under Title 7A, Code of Alabama.
"COUNT ONE
 "1. On or about May 17, 1976, the Plaintiff was an employee of Conecuh Quick Freeze, Inc. in its packing house facilities in Evergreen, Conecuh County, Alabama, where the Plaintiff had to use a meat grinding machine which had been designed, manufactured, inspected, sold, distributed, repaired and/or placed in the stream of commerce by the Defendants John E. Smith's Sons Company, a Division of Hobam, Inc., a corporation; and the following Defendants whose names will be supplied by amendment when ascertained: ABC Partnership, XYZ, Inc., a corporation and John Doe and Richard Roe.
 "2. That on or about the above mentioned date the Plaintiff's right arm became caught in said meat grinding machine and the Plaintiff sustained a traumatic amputation of the right arm below the elbow, causing great pain and mental suffering and permanent disfigurement and disability. The Plaintiff was caused to be hospitalized to seek medical attention and to incur expenses thereby and will be caused to incur such expenses in the future. The Plaintiff has also lost wages as the result of his injury and will be prevented in the future from pursuing other occupations which would require the use of his right arm, and the Plaintiff will incur great economic losses thereby. The Plaintiff has been permanently deprived of his right arm and will always suffer from the loss thereof and from the attendant mental anguish.
 "3. The Plaintiff avers that his injuries were the direct and proximate consequence of the negligence of the Defendants in designing, manufacturing, inspecting, selling, marketing, distributing, repairing and/or placing in the stream of commerce said grinding mill in a defective condition which rendered it unreasonably dangerous to the Plaintiff as the ultimate user thereof or consumer thereof, in that the Plaintiff was exposed to an unreasonable risk of injury to his arm while using said machine for the purpose and in the manner for which it was intended or expected by Defendants. Said Defendants were engaged in the business of designing, manufacturing, inspecting, selling, distributing and/or repairing said product. The Defendants placed the said product in the stream of commerce with the reasonable expectation that it would reach the Plaintiff as the ultimate user or consumer thereof. Said product reached the user or consumer without substantial change in the condition in which it was sold; and that if there was any change in the condition, nature or the use in said product by the Plaintiff or anyone else, said change was anticipated and expected by the Defendants.
 "WHEREFORE, Plaintiff demands judgment against the Defendants John E. Smith's Sons Company, a Division of Hobam, Inc., a corporation; ABC Partnership; XYZ, Inc., a corporation and John Doe and Richard Roe in the sum of $500,000.00 and costs."
Through discovery it was learned that the meat grinder was manufactured and sold by John E. Smith's Sons Co., a close corporation, probably in 1949. The grinder did not have a guard over the opening to prevent feeding meat with the hand, nor did it have a stomper or mallet with which to feed and stuff the grinder, although other grinders marketed at the time by Smith Co. had these safety features.
In 1962 Smith sold substantially all its assets for cash, including accumulated good will, orders, repair contracts, and services to Hobam, Inc., who styled themselves "John E. Smith's Sons Co., a division of Hobam, Inc., since 1868." Two members of the Smith family retired at the sale, but otherwise the business operation of the company remained the same, with the same physical plant and employees. The sale included a non-competition agreement and there was no participation in management decisions or *Page 784 
profits by the predecessor corporation after 1962. Hobam received all patents, including one on the grinder in question and the safety devices used on similar models. Within the last several years Hobam has sold replacement parts to Conecuh Quick Freeze for this particular meat grinder.
After the transfer of assets the predecessor corporation changed its name to 66 Highland Ave., Inc., by amending its Certificate of Incorporation, and it continued in existence defacto as well as de jure until it was liquidated in 1975. Under the terms of the purchase agreement 66 Highland Ave., Inc., specifically retained liability for all products liability claims on machines sold prior to June 30, 1962. 66 Highland Ave., Inc., continued to maintain product liability insurance until June, 1977, to cover claims arising over this machinery. The coverage was in effect at the time of Andrews' accident. Upon obtaining this information regarding the sale of assets Andrews substituted 66 Highland Ave., Inc., as a defendant. It appears, however, that the plaintiff has been unable to serve this corporation. No other amendments to the complaint were made.
Andrews presents three theories to attack the summary judgment: (1) Hobam is liable as the supplier of component replacement parts for a defectively designed machine; (2) Hobam is liable for failure to warn third persons of obvious defects of which it was aware in its predecessor corporation's product; and (3) Hobam is liable for defects in its predecessor's product since Hobam is a mere continuation of the original manufacturer.
Andrews' first theory misconstrues the concept of liability for defective component parts. Under Casrell v. AltecIndustries, Inc., 335 So.2d 128 (Ala. 1976), and Atkins v.American Motors Corp., 335 So.2d 134 (Ala. 1976), a manufacturer who uses component parts in manufacturing or assembling a product for sale as a complete unit may be liable under appropriate circumstances where the defect is in a component part. But Hobam is not in this instance manufacturing products in this fashion. It has simply made replacement parts which were not alleged to be defective in themselves. The alleged defect here is in the design of the meat grinder, which Hobam was not responsible for. Under Andrews' approach, a tire manufacturer could be liable for injuries resulting from the defectively designed body structure in an automobile.
Andrews predicates liability for failure to warn upon this Court's holdings in Ford Motor Co. v. Rodgers, 337 So.2d 736
(Ala. 1976), and Beloit Corp. v. Harrell, 339 So.2d 992 (Ala. 1976). In Rodgers the Court stated that:
 "[I]f a manufacturer places a machine on the market which is imminently dangerous when put to its intended purpose, then the manufacturer is chargeable with the duty `not to expose to such danger an ignorant public who will likely use it. And if defendant [manufacturer] knows that it is imminently dangerous when used in the customary manner, it is chargeable with anticipating such injury from its use without exercising reasonable diligence to make such danger known to the public likely to use it.' [Altorfer Bros. Co. v. Green,] 236 Ala. 427, 183 So. 415, 417 [(1938)]."
Although the duty does not extend to open and obvious dangers,Rodgers, it is for the jury to determine whether or not a specific plaintiff subjectively appreciated a known risk.Beloit. Andrews asserts that this duty should be imposed upon Hobam as it was responsible for servicing the machine, it had knowledge of the defective design of the machine, and it had the means and technology to guard the machine.
The possibility of recovery, under these circumstances was raised in Shane v. Hobam, Inc., 332 F. Supp. 526 (E.D.Pa. 1971), where the district court denied defendant's motion for summary judgment, noting that the record did not show whether Hobam had ever serviced the grinder in question or had obtained knowledge of its allegedly defective design. See also Wilson v. Fare WellCorp., 140 N.J. Super. 476, 356 A.2d 458 (1976). In this case the record answers both *Page 785 
of these questions: Hobam had serviced the grinder at Conecuh Quick Freeze and it did have knowledge within legal contemplation of the hazards presented by the grinder. This theory of recovery was neither presented in plaintiff's complaint, nor was it added by amendment. While similar questions may arise in an attempt to prove assumption of the risk under the Extended Manufacturer's Liability Doctrine, seeRodgers and Beloit, Andrews' case is not in that posture. He is attempting to recover under a theory which predates the Extended Manufacturer's Liability Doctrine and which was not entirely subsumed by it. Even under our liberalized rules of pleading, Andrews' failure to include this theory of recovery in his complaint is fatal.
Finally, Andrews argues that Hobam is liable for defects in its predecessor's product since Hobam is a mere continuation of the corporation which actually manufactured the meat grinder. As a general rule, where one company sells or otherwise transfers all its assets to another company, the transferee is not liable for the debts and liabilities of the transferor unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to ade facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor. 15 Fletcher, Cyclopedia Corporations § 7122 (Perm.ed. 1973); 19 Am.Jur.2d § 1546. Andrews urges us either to hold this rule inapplicable to products liability claims or to fit Hobam within the fourth exception to the rule.
To support his position that the rule should be inapplicable to products liability claims Andrews relies on the recent case of Ray v. Alad Corp., 19 Cal.3d 22, 136 Cal.Rptr. 574,560 P.2d 3 (1977). There the successor corporation continued its predecessor's operation in the same location and with the same personnel and materials. The successor corporation marketed its products under their original trade names. The trial court dismissed the action but the California Supreme Court reversed, relying squarely on the policies underlying strict liability. Essential to its decision was the concept of risk-spreading and the unavailability of the predecessor corporation for suit (the predecessor was liquidated soon after the transfer.) Consequently, to adopt the rules laid down by the California Supreme Court in Alad would be inappropriate in this state, where negligence remains the gravamen of products liability.
The plaintiff has also referred us to the case of Turner v.Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873 (1976), which held that there may be a cause of action where the totality of the transaction demonstrates a basic continuity of the enterprise. There the Michigan Supreme Court treated the problem as one of products liability, not corporation law, but its language recognizes a certain culpability on the part of the successor corporation. The Court noted that the old and new corporations were not really "corporate strangers." The successor purposefully established an appearance of continuity to promote sales. As the Court stated,
 "Justice would be offended if a corporation which holds itself out as a particular company for the purpose of sales, would not be estopped from denying that it is that company for the purpose of determining products liability."
The reasoning of Turner is persuasive and compatible with our own Extended Manufacturer's Liability. We opine that Hobam is a prime candidate for application of an estoppel theory. There was a basic continuity of the enterprise between the original Smith Co. and Hobam: the same products were manufactured by the same people in the same place. Hobam has made every effort to benefit from the reputation established by the original Smith Co., even to retaining the epithet, "since 1868." Hobam holds itself out to its customers as an old established company and solicits their business as if it were the old family firm with which they originally dealt. It is only when an injury occurs that they inform their customers that they are not really the Smith Co. who manufactured the meat grinder. Under these circumstances *Page 786 
justice requires that Hobam be estopped from denying liability to innocent third parties, even though it may have agreed with its predecessor that Hobam would not be liable for products liability claims.
However, our approval of an estoppel approach to liability of a successor corporation for its predecessor's defective products cannot lead to a reversal in this case. Again, this theory of recovery, while thoroughly briefed and argued on appeal, was completely omitted from the complaint. The complaint speaks only of "John E. Smith's Sons Co., a division of Hobam, Inc." There is never any mention of successor and predecessor corporations, a transfer of assets, or a continuation of the original business. The complaint gives the defendant no notice whatsoever that it is to be held liable as the successor of the corporation that actually manufactured the meat grinder. Such a drastic alteration in the normal posture of a suit under the Extended Manufacturer's Liability Doctrine must at least be alluded to in the pleadings. Since plaintiff has failed to do so, the summary judgment for the defendant must be affirmed.
AFFIRMED.
BLOODWORTH, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs in the result.