[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 768 
This is a products liability action brought by Robert and Debra Rivers arising out of personal injuries to Mr. Rivers caused by "kick-back" from a Stihl chain saw. Plaintiffs seek a writ of mandamus to the Circuit Court of Mobile County to review that court's ruling that service of process was not perfected on the manufacturer, Andreas Stihl KG, a commercial partnership in West Germany. Plaintiffs also appealed the granting of a summary judgment in favor of two other defendants, Stihl, Inc., Andreas Stihl's wholly owned United States subsidiary which markets Stihl chain saws in this country, and L L Saw and Cycle Shop, Inc., which sold the chain, bow, and sprocket which were mounted on the chain saw at the time of the incident forming the basis of the action. The petition for writ of mandamus and the appeal from the summary judgments have been consolidated for review.
 I
The petition for writ of mandamus involves the question of jurisdiction over the defendant, Andreas Stihl. The defendant did not question its amenability to service of process by Alabama courts, but took the position that service of process had not been perfected on it. Resolution of the issue depends on a construction of the Hague Convention on The Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of November 15, 1965 (The Hague Convention).
The United States and the Federal Republic of Germany (West Germany) are signatories of the Hague Convention. See Vol. VII, Martindale-Hubbell Law Directory, Part VII, pp. 1-8 (1983). The convention was drafted to simplify and expedite the service of judicial and extrajudicial documents between nations and to ensure that recipients are served in sufficient time to allow them to act. (Preamble). It applies in all cases concerning civil or commercial matters wherein documents are transmitted abroad between those in signatory countries. (Article 1).
The convention provides that each state is to designate a central authority to receive requests for service of documents. (Article 2). Requests for service (which must conform to a model annexed to the convention) should be sent, along with the documents in question, by the judicial officer of the state *Page 769 
in which the documents originate to the designated central authority of the country in which the recipient is located. (Article 3). When it receives a request, the central authority is to arrange service according to its internal laws. (Article 5). Once service is perfected, the central authority must forward a certificate to that effect to the applicant. (Article 6). If the request is insufficient for some reason, the central authority returns it and the unserved documents, along with a statement of its objections, to the applicant. (Article 4).
The convention also prescribes several alternative methods of service, including service by postal channels directly to the recipient, but allows signatory countries to object to the alternative methods. (Article 10). West Germany has made such an objection and has specified that all documents must be served through the central authority and must be translated into German. See VII Martindale-Hubbell Part VII, pg. 4, paragraphs 7a (1) and (4) (1983).
Article VI of the United States Constitution provides that the States are bound by treaties entered into by the United States. Therefore, service must be perfected according to the terms of the Hague Convention, even though ARCP 4.4 (b) provides several methods of serving process in foreign countries, including service directly on the defendant by certified mail or its equivalent. ARCP 4.4 (b)(1). See Dr. Ing.H.C.F. Porsche v. Superior Court, 123 Cal.App.3d 755,177 Cal.Rptr. 155 (1981).
The plaintiffs began their attempts to serve Andreas Stihl in July of 1980. They attempted to perfect service by certified mail several times. Copies of the summons and complaint were sent directly to Andreas Stihl in West Germany on three occasions, once in English, once in German, and once in both languages. Copies were also sent to Stihl, Inc., an American corporation, on the theory that it was Andreas Stihl's agent. After each attempt, service was quashed on Andreas Stihl's motion.
In September, 1981, plaintiffs requested the clerk to send a copy of the summons and complaint to the Ministry of Justice of Baden-Wiirtemberg. The minister returned the summons and complaint unserved along with his objections. He stated that the documents were not accompanied by a request form conforming to the model annexed to the convention and that the German translation of the documents was not placed on a separate page from the English. Another motion to quash was granted by the trial court.
In December, 1981, plaintiffs requested that two separate copies of the summons and complaint, one in English and one in German, be sent to the minister. Another letter from the minister was shortly forthcoming. He indicated that the requirement of duplicate copies meant two copies in each language. He also noted the omission of the requisite request form.
Pursuant to the plaintiffs' latest attempted service, the clerk of the trial court had sent the summons and complaint to the minister of justice by certified mail. Upon receiving the return receipt signed by someone at the ministry, the clerk made an entry on the case action summary sheet denoting perfection of service of process on Andreas Stihl. In response to the entry on the summary sheet denoting service, attorneys for Andreas Stihl in Mobile requested, and were granted, an extension of time to respond. After discovery that the summons and complaint had not been forwarded by the minister to Andreas Stihl, the defendant moved for, and was granted, an order directing the clerk to change the case action summary sheet to reflect the fact that service had not been perfected.
The plaintiffs seek a writ compelling the trial court to reinstate the notation on the civil action summary sheet indicating that service of process has been perfected on Andreas Stihl, or to order that the necessity of service of process has been waived.
Since West Germany has objected to service within its borders by any method other than through the minister of justice, plaintiffs' attempts to serve the defendant by certified mail were ineffective. Plaintiffs were also unsuccessful in their efforts *Page 770 
to serve the defendant through the minister of justice, because they failed to send the proper request form and failed to send duplicate copies of the summons and complaint in each language. Therefore, since the procedure outlined in the Hague Convention was not followed, service of process was not perfected.
We cannot accept plaintiff's arguments that the minister's reliance on "unfounded claims and minor technicalities" should not be allowed to defeat plaintiffs' efforts to serve Andreas Stihl. Plaintiffs failed to complete two copies of a request form (in English) which must accompany the documents to be served. (Hague Convention, Article 3). Copies of the form are annexed to the convention and are available through the United States Marshals. Plaintiffs must also have the clerk send four separate copies (two in each language) of the summons and complaint along with the copies of the request. We do not find these requirements to be unduly onerous, nor do we find that the plaintiffs have complied with them.
In so ruling we do not intend to allow a recalcitrant governmental official in Germany to unjustifiably prevent plaintiffs from obtaining service on the defendant. In such a case the convention would not prevent the trial court from proceeding as to Andreas Stihl. The convention prohibits judgments from being taken against defendants who have not appeared until service has been perfected by delivery via the minister of justice. (See Article 15). Here, Andreas Stihl has had actual notice, has appeared by way of motions and has participated in depositions of the plaintiffs. In the future, should the minister of justice unjustifiably refuse to forward the summons and complaint after plaintiffs have complied with the applicable provisions of the convention, we will treat Andreas Stihl as having been served.
Plaintiffs also argued that Andreas Stihl has waived service. ARCP 12 (g) requires that:
 "A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." [Failure to state a claim upon which relief can be granted or failure to join an indispensable party.]
The defense of insufficiency of process is waived if not included in a Rule 12 motion. ARCP 12 (h)(1).
After plaintiffs' last attempt to serve Andreas Stihl by certified mail and before their attempts to serve the defendant through the minister of justice, the defendant filed a motion to quash raising but one objection, that service by direct mail was impermissible. Previous motions had raised the requirements of the convention in general terms instead of limiting the motion to a particular objection. Plaintiffs argued that in so doing the defendant waived its right in any subsequent motions to rely on any defenses under the convention other than the impermissibility of direct mail.
Plaintiffs' argument overlooks the fact that defendant's subsequent motions were directed to attempts at service not yet made at the time of the motion which specified direct mail as the only objection. Defendant could not be expected to anticipate defenses to attempts at service not yet made. Since those defenses were not yet available to the defendant at the time of the alleged waiver, ARCP 12 (g) by its express terms was inapplicable.
Plaintiffs also argued that by filing a motion for an extension of time to answer after plaintiffs' latest attempt to serve it, Andreas Stihl manifested an intent to defend the case on its merits and waived its defense of insufficiency of service under Rule 12 (b)(4). This argument overlooked the fact that ARCP 12 (g) requires a consolidation of motions made "under this rule." *Page 771 
A motion for extension of time is made under Rule 6. A motion containing a request for extension of time does not cause a waiver of Rule 12 defenses unless some additional language in the motion would constitute a waiver. Such was not the case here.
 II
Plaintiffs also appealed from summary judgments entered in favor of Stihl, Inc. and L L Saw and Cycle Shop, Inc.
The chain saw in question was distributed by a corporation formerly named Stihl American, Inc. In August, 1975, Stihl American, Stihl, Inc., and Andreas Stihl entered into an agreement terminating Stihl American's exclusive distributorship rights and substituting Stihl, Inc. as exclusive distributor of Andreas Stihl's products in the United States. Stihl American received a sum in cash for the termination of its distribution rights. Stihl American retained possession of its accounts receivable. Andreas Stihl and Stihl, Inc. agreed to purchase any receivables at full face value should they become 120 days past due, to assume liability for products liability claims arising out of Stihl products previously sold by Stihl American and to indemnify Stihl American for losses arising out of such claims. Stihl American agreed to deliver its inventory of Stihl products to Stihl, Inc., to pay off an indebtedness owed to Andreas Stihl, to cease any business connected with manufacturing, selling, importing or distributing chain saws and to change its name. Stihl American subsequently changed its name to Williams, Craig and Neer, Inc.
When the plaintiffs discovered that Stihl, Inc. was organized after the chain saw was sold, they amended their complaint to state a cause of action against Stihl, Inc. as a successor of Stihl American by pleading the doctrine of estoppel spelled out by this court in Andrews v. John E. Smith's Sons Co.,369 So.2d 781 (Ala. 1979).
Liability of a successor corporation under corporation law is largely dependent on the form of the acquisition. When corporations merge, the successor remains liable for its predecessors' liabilities. Birmingham Trust National Bank v.State, 292 Ala. 335, 294 So.2d 153 (1974). This result is also obtained where, regardless of the denomination of the transaction by the parties, the acquisition constitutes a de facto merger. See Shannon v. Samuel Langston Co., 379 F. Supp. 797
(W.D.Mich. 1974); When, on the other hand, a corporation purchases the assets of another company the transferee is generally not liable unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor. 15 Fletcher, CyclopediaCorporations § 7122 (Perm. ed. 1973); 19 Am.Jur.2d Corporations § 1546 (1965).
In the emerging field of products liability a separate body of law regarding the liability of successor corporations has begun to develop. See, e.g. Ramirez v. Amsted Industries,86 N.J. 332, 431 A.2d 811 (1981); Ray v. Alad Corp., 19 Cal.3d 22,136 Cal.Rptr. 574, 560 P.2d 3 (1977); "Products Liability — Liability of Transferee," for Defective Products Manufactured by Transferor, 30 Vand.L.Rev. 238 (1977). While recognizing that all of the policies underlying the rationales of other courts may not be applicable to the Alabama Extended Manufacturer's Liability Doctrine, this court adopted a "basic continuity of enterprise" test regarding the issue of transferee liability derived from Turner v. Bituminous CasualtyCo., 397 Mich. 406, 244 N.W.2d 873 (1976), which contains an extensive analysis of the issues involved. See Andrews v. JohnE. Smith's Sons Co., 369 So.2d 781 (Ala. 1979). We ruled that a transferee may be held liable for its predecessor's liabilities "where the totality of the transaction demonstrates a basic continuity of the enterprise." Andrews at 785.
The factors enumerated in Turner and Andrews, when applied to the facts in *Page 772 
the case at bar, lead us to the conclusion that there was a basic continuity of enterprise between the distribution of Stihl products by Stihl American and Stihl, Inc. sufficient to justify imposition of liability on Stihl, Inc. for injuries received by defective Stihl products sold by Stihl American. Here, just as in Andrews, the successor acquired all of the predecessor's assets pertaining to the enterprise (distribution of Stihl products in this country). It was assigned American's contract rights and acquired the exclusive rights in this country to the Stihl trade name. Another factor, not present inAndrews, militates in favor of the imposition of liability on Stihl, Inc. Here, Stihl, Inc. expressly assumed liability for damages in products liability actions arising out of sales of Stihl products by Stihl American. It is true that, as the defendant pointed out, Stihl, Inc. did not use American's physical plant and apparently did not employ all of American's employees.[1] We do not consider those factors to be controlling here since exactly the same products manufactured by the same manufacturer were being distributed in the same market under the same trade name.
Since this case reached us on appeal from a summary judgment for defendant, these facts must be viewed in a light most favorable to the plaintiffs. Since there is ample evidence to support a finding that Stihl, Inc. should be estopped, based on the enterprise liability theory, from denying liability for injuries caused by a chain saw sold by American, we must reverse the summary judgment.
L L Saw and Cycle Shop, Inc. sold Mr. Rivers the bow, chain, and sprocket which was mounted on the chain saw at the time the injury occurred. As a seller of replacement parts incorporated into the chainsaw, L L may be liable under appropriate circumstances if a defect in the parts contributed to plaintiff's injuries. Andrews v. John E Smith's Sons Co.,369 So.2d 781, 785 (1979).
L L based its motion for a summary judgment primarily on Mr. Rivers's deposition, during which the following colloquy took place:
 "Q. All right. Is it your testimony here today that the only defect with this particular chainsaw is that it does not have the quick stop or chain brake feature?
"Mr. Sigler:
Object to the form of the question.
"The Witness:
Yes, that's the only thing I've got against it.
"By Mr. Brown:
 Q. All right. You don't have any problems with the bow . . .
A. No.
Q. . . . or the chain? "Mr. Sigler:
Object to the form of the question
"The Witness:
No.
"By Mr. Brown:
Q. Or the gig or the hand guard?
A. No, sir.
Q. No problems with any of those things?
A. No, sir.
 Q. No problems with any of those things that you got from L L?
A. No, sir."
Negligence is the gravamen of a products liability action under Alabama law. Atkins v. American Motors Corp.,335 So.2d 134 (Ala. 1976). Summary judgments are not usually warranted in negligence actions except where the defendant is asserting an affirmative defense which can be established with certainty, such as res judicata, statute of limitations, or discharge in bankruptcy. 6 Moore's Fed. Practice § 56.15 [1.-0] at 56-399 (1982). This is due to the nature of negligence actions, since they involve such questions as reasonableness and proximate cause. Tolbert v. Gulsby, 333 So.2d 129, 136 (Ala. 1976). If there is a scintilla of evidence to support the plaintiffs' *Page 773 
claim a summary judgment is inappropriate. Gross v. RepublicSteel Corp., 400 So.2d 383, 385 (Ala. 1981); Raley v. RoyalIns. Co., Ltd., 386 So.2d 742, 743 (Ala. 1980).
We rule that a summary judgment for L L was inappropriate at this juncture. Plaintiffs have alleged a failure to warn of the dangers of "kick-back" or of the availability of safety devices for the chain saw which might have made the chain and other parts sold by L L safe for use by the plaintiff. When a seller knows or should know that its product is imminently or inherently dangerous when used in its customary manner, the seller is under a duty to use due care to acquaint the user with the danger. Altorfer Brothers Co. v. Green, 236 Ala. 427,183 So. 415, 417 (1938). The defendant, of course, may assert assumption of the risk as a defense and the jury may properly take into account such factors as the expertise of the plaintiff and the obviousness of the danger in reaching its decision. See, e.g., Ford Motor Co. v. Rodgers, 337 So.2d 736
(Ala. 1976).
We also note that discovery is not yet complete. L L has not answered, nor has it responded to plaintiffs' interrogatories. The existence of a defect in a product is typically established, if at all, by expert testimony. While we acknowledge the availability of a summary judgment at any stage in the proceeding, we also must recognize the practical problems in a products liability action of a summary judgment before discovery has proceeded to the point where plaintiffs have obtained expert witnesses who can testify about alleged defects. The chain which was sold by L L was, obviously, intimately associated with plaintiff's injuries. Plaintiffs should be allowed to proceed with discovery to give them an opportunity to produce evidence relative to the issue of whether the parts were defective.
In light of plaintiffs' failure to comply with the provisions of the Hague Convention, plaintiffs' petition for writ of mandamus is denied. The summary judgment in favor of Stihl, Inc. and L L is reversed and the case remanded for proceedings not inconsistent with this opinion.
WRIT DENIED.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON and ADAMS, JJ., concur.
EMBRY, J., concurs specially.
[1] It is impossible to determine from the record before us what portion of the employees were retained, though some were apparently terminated.