Harold Walter Pietz, a student at Jacksonville State University, was injured when he fell during an ROTC field exercise on November 16, 1985. The Jacksonville State ROTC unit was required to rappel down a cliff, using equipment issued by the ROTC unit. Part of this equipment was the snap link mountain piton (a/k/a a carabiner) manufactured by Orthopedic Equipment Company, Inc. ("OEC"), a wholly-owned subsidiary of Biomet, Inc. As Pietz descended a steep cliff, the non-locking gatekeeper portion of the snap link opened, causing the rope to slacken and Pietz to free fall approximately 80 feet along the rock ledge. Pietz was severely injured in this fall.
Pietz filed suit against OEC under the Alabama Extended Manufacturer's Liability Doctrine, alleging defects in the design of the snap link. The complaint was amended to add F.I. Saemann Enterprises, Inc., and Biomet, Inc., as defendants. All three defendants filed motions for summary judgment, contending that the snap link was designed by the Federal Government and claiming immunity from liability for any design defects, under the government *Page 154 
contractor defense doctrine. The motions were originally heard by the trial judge on October 6, 1988. Summary judgment was entered in favor of F.I. Saemann Enterprises, Inc., at that time. The trial judge suggested that he certify the government contractor defense issue for Ala.R.App.P. Rule 5 review. However, after an attempt by the defendants to move the cases to the United States District Court and a remand of the case to state court, the trial judge heard the motions and entered summary judgment on behalf of OEC and Biomet on March 30, 1989. Pietz appeals from this judgment.
The issues before us are: (1) whether the trial judge erred in entering summary judgment based on the government contractor defense as set forth in Boyle v. United Technologies Corp.,487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), and (2) whether Biomet is a "successor in interest" to OEC.
The government contractor defense originated in the case ofYearsley v. W.A. Ross Construction Co., 309 U.S. 18,60 S.Ct. 413, 84 L.Ed. 554 (1940). The Yearsley case involved a government contractor who built some river dikes for the government; the work caused erosion on land adjacent to the dikes. The United States Supreme Court stated, "[I]f [the] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." Id. at 20-21, 60 S.Ct. at 414-415. Two later cases created the Feres-Stencel doctrine, which were followed until Boyle. See, Feres v. United States,340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and Stencel AeroEngineering Corp. v. United States, 431 U.S. 666,97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).
In Boyle, the United States Supreme Court reviewed the various government contractor defenses utilized by the circuit courts of appeals. The issue before the Boyle Court was whether a contractor providing military equipment to the Federal Government could be held liable under state tort law for injury resulting from a design defect. Boyle created a new government contractor defense and enunciated a three-part test:
 "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."
487 U.S. 500 at 512, 108 S.Ct. 2510 at 2518.
The Supreme Court makes it clear in Boyle that whether the facts of the case establish the condition for the defense is a question for the jury. The Court, in remanding the case, wrote:
 "It is somewhat unclear from the Court of Appeals' opinion, however, whether it was in fact deciding that no reasonable jury could, under the properly formulated defense, have found for the petitioner on the facts presented, or rather was assessing on its own whether the defense had been established. The latter, which is what the petitioner asserts occurred, would be error since whether the facts establish the conditions for the defense is a question for the jury."
487 U.S. 500 at 514, 108 S.Ct. 2510 at 2519 (emphasis added).
Further, the Supreme Court in Boyle cautioned that it was not suggesting that state law would generally be pre-empted by the government contractor defense. To illustrate, the Court used two examples:
 "If, for example, the United States contracts for the purchase and installation of an air conditioning unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the government but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests *Page 155 that state law would generally be pre-empted in this context."
Id., 487 U.S. at 509, 108 S.Ct. at 2516 (emphasis added). The second example given by the Supreme Court was as follows:
 "If, for example, a federal procurement officer orders, by model number, a quantity of stock helicopters that happen to be equipped with escape hatches opening outward, it is impossible to say that the government has a significant interest in that particular feature. That would be scarcely more reasonable than saying that a private individual who orders such a craft by model number cannot sue for the manufacturer's negligence because he got precisely what he ordered."
Id., 487 U.S. at 509, 108 S.Ct. at 2516.
Thus, it is clear that the question of whether a government contractor is to be shielded from liability becomes a question for the jury to weigh. It is also clear that the threshold question is whether the equipment is indeed "military equipment."
In the present case, the trial judge entered summary judgment for OEC and Biomet. Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. Besides the question of whether the snap links are "military equipment," the facts of the case must be considered against the other tests enunciated byBoyle.
The first numbered test in Boyle requires that the court examine whether the United States approved reasonably precise specifications. The record is devoid of any evidence that the Government at any time considered and rejected the idea of a locking device on the gatekeeper feature of the snap link. In fact, it was the deposition testimony of Lowell Gard, a supervisor at OEC, who had general responsibility for in-plant operations during the manufacture of the snap links, that the workers at OEC did not have any discussion with the Government people about a safety locking nut or the lack of a locking nut on the snap link.
The second numbered test in Boyle is whether the equipment conformed to those specifications. The deposition testimony of John Wagoner, a quality control technician at OEC; Inez Feldman, a contract administrator; and Lowell Gard, was that OEC was aware of a problem in the specifications and had detected it soon after receiving the specifications. OEC applied for and obtained a deviation from the specifications provided by the Government after examining similar snap links manufacturered by competitors. John Wagoner testified in his deposition as follows:
 "Q: The Government agreed to pay Orthopedic Equipment four hundred thousand dollars as a result of some defects in the original specifications, material specification?
 "A. I wouldn't like to call them defects in the material specifications, but there was something dramatically wrong."
The deposition testimony of Lowell Gard was that the material change involved a substance called 4041 steel, which was used by a competing company that added lead to the alloy to prevent the material from warping during the heat treatment. There was also conflict in the deposition testimony as to whether the specifications were complied with and what testing of the snap links was done. Lowell Gard testified that the snap links were tested on a "feel deal" that entailed manually snapping the link. However, he did not recall that testing was done on each snap link.
The final numbered test is whether the supplier warned the United States Government about the dangers in the use of the equipment that were known to the supplier but not to the Government. The Court of Appeals for the Fifth Circuit has paraphrased the third test by stating that it requires that the "government contractor warn the government when the contractor has information which the government lacks." Trevino v. GeneralDynamics Corp., 865 F.2d 1474 at 1481 (5th Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 327 (1989). The deposition testimony of Gard, Wagoner, and Feldman indicates that OEC *Page 156 
knew that these snap links were to be used for mountain climbing. OEC sought a design deviation that would help OEC more easily manufacture the snap link. However, if there existed any design defects related to safety or performance, there is a genuine question whether the contractor informed the Government about them. The deposition testimony clearly presents a jury question as to whether the facts establish the condition for the utilization of the defense. Boyle,487 U.S. at 513-14, 108 S.Ct. at 2519.
Furthermore, this case was brought under the Alabama Extended Manufacturer's Liability Doctrine statutes. There has been no opportunity for a jury to test the facts of the case against state law. The United States Supreme Court in Boyle says that it does not suggest that state law would generally be pre-empted by the government contractor defense. There is no federal statute authorizing pre-emption of state law in cases of this kind. In fact, the Congress of the United States has for 50 years resisted the lobbying efforts by defense contractors to pass such statutes.
Having determined that the government contractor defense is a question for the jury, we must determine whether defendant Biomet is a successor in interest to the manufacturer, Orthopedic Equipment Company, Inc. To determine successor liability, this Court has adopted the "basic continuity of the enterprise" test. See Andrews v. John E. Smith's Sons Co.,369 So.2d 781 (Ala. 1979), Rivers v. Stihl, Inc., 434 So.2d 766
(Ala. 1983), Turner v. Wean United, Inc., 531 So.2d 827
(Ala. 1988). We wrote the following in Andrews:
 "As a general rule, where one company sells or otherwise transfers all its assets to another company, the transferee is not liable for the debts and liabilities of the transferor unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor."
369 So.2d at 785 (citations omitted). We set out the factors of the "continuity of the enterprise" test in Turner v. WeanUnited, Inc., which adopts factors enunciated by the Michigan Supreme Court in Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873 (1976):
 "The first factor of the continuity of the enterprise test, and arguably the most important, is whether there is a basic continuity of the seller corporation, a retention of key personnel, assets and operation. . . .
 "The second factor of the continuity of enterprise test is whether the selling corporation dissolves shortly after the transfer of assets. . . .
 "The third factor to be considered is whether [the purchasing corporation] expressly assumed the liability of the [seller corporation]. . . .
 "The final factor of the continuity of enterprise test, as explained in Turner, is whether the purchasing corporation held itself out to the world as the effective continuation of the seller corporation."
1531 So.2d 827, 830-31. This also presents a question for the jury.
For the reasons stated above, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.