Nathaniel Brown sued American Hoist Derrick Company ("Amhoist"); Economy Baler Company of Ohio, a division of American Baler Company ("Economy/Ohio"); and Denbo Iron and Metals Products Company ("Denbo") for damages based on injuries he sustained on November 28, 1986, while "working . . . as a baler for Denbo." Thereafter, Amhoist filed a bankruptcy petition in the United States Bankruptcy Court for the District of Colorado; that court entered an automatic stay of this action insofar as it related to Amhoist. Since the date of the stay, Amhoist has not participated in this case, and it is not involved in this appeal. Denbo filed a motion for summary judgment, to which Brown offered no opposition. Thereafter, the trial court entered a judgment for Denbo, and Brown does not appeal from that judgment. Subsequently, Economy/Ohio filed a motion for summary judgment, alleging that, as a matter of law, it was not the successor in interest of Amhoist. The trial court entered a judgment for Economy/Ohio. Brown appeals.[1]
Viewing the evidence in the light most favorable to Brown, as we are required to do under the applicable standard of review, we must assume that the following occurred: At the time of the accident made the basis of this case, Brown was working on the premises of Denbo while on a prison release program. He was operating an "Economy" baler manufactured in 1959 by Economy Baler of Michigan, a Michigan corporation, and sold to Denbo in 1959. In 1967, Economy Baler of Michigan merged into Amhoist. In 1976 (17 years after the manufacture of the Economy baler on which Brown was injured and the sale of that baler to Brown's employer, Denbo), Economy/Ohio, which was a wholly owned *Page 2 
subsidiary of American Baler Company, an Ohio corporation, was created. Thereafter, Economy/Ohio purchased certain assets from Amhoist relating to the Economy baler product line. The sale was a cash-for-assets transaction, and no stock was exchanged. The assets that Economy/Ohio purchased included inventory, manufacturing equipment, dealer lists, trade names, trademarks, customer lists, and unfilled customer lists related to two baler lines ("Economy" and "Lake"). However, Economy/Ohio did not purchase the business assets relating to the two other baler lines manufactured by Amhoist or the manufacturing sites for the manufacture of the Economy baler it purchased from Amhoist. Rather, after the sale, Economy/Ohio manufactured the Economy balers in Ohio, and the machinery Amhoist used to manufacture the balers at its manufacturing sites was not transferred. There was no provision for Amhoist to give technical support to Economy/Ohio or to assist it in manufacturing the Economy balers. Amhoist was not required to dissolve after the sale, nor were there any noncompetition clauses or other covenants prohibiting Amhoist from manufacturing other baling machines. After the sale, three line employees from Amhoist joined Economy/Ohio and George Waterman, a service manager from Amhoist, joined Economy/Ohio as its product manager.
In the purchase agreement, Economy/Ohio disclaimed assumption of all obligations and liabilities for "products manufactured, assembled or sold by [Amhoist]," except for responsibility for certain unfilled customer orders, purchase orders, and vendor commitments (none of which is relevant in this case); and Amhoist agreed to indemnify Economy/Ohio for any claims brought in connection with products manufactured by Amhoist prior to the sale. In the purchase agreement, Amhoist assumed liability for claimed deficiencies in the Economy balers it had manufactured prior to the sale to Economy/Ohio in 1976, and agreed to defend claims arising from injuries sustained in connection with the operation of the Economy balers manufactured prior to Economy/Ohio's purchase of the assets and to pay settlements and judgments resulting from such claims.
From the 1976 purchase of the assets from Amhoist until 1980, when it merged with American Baler Company, Economy/Ohio sold Economy balers and parts for the Economy baler. After the merger, American Baler Company manufactured and sold the Economy balers and parts.
Brown argues that Economy/Ohio was a "mere continuation of the enterprise" previously operated by Amhoist. He argues that Economy/Ohio's purchase of every asset it needed to manufacture Economy balers except the building was sufficient to establish liability; that its use of the same trade name or product line ("Economy") justified the imposition of successor liability, because, he argues, it had used that trade name in hopes of soliciting customers based on the reputation associated with the Economy baler manufactured by Amhoist; and that the fact that Amhoist continued to exist and to defend claims involving Economy balers sold prior to 1976 was insufficient to prevent an imposition of successor liability. In any event, according to Brown, in deciding whether a successor corporation should be estopped from denying legal liability, the significant relationship is not the relationship between the predecessor and the successor corporations, but the relationship between a successor who opts to benefit in soliciting customers based on the predecessor's reputation and innocent third parties who are injured by the product. Therefore, Brown contends that Economy/Ohio consciously endeavored to benefit from the past sales history of Economy balers manufactured by Amhoist. He supported that argument by presenting an advertisement from the 1990 edition of Thomas Register of American Manufacturers, stating that Economy/Ohio had been marketing balers under the trade name "Economy" since 1881 and had sold over 60,000 balers, when in fact, he argues, Economy/Ohio was not the entity that had been making "Economy" balers for over a century, as it advertised, and had not sold over 60,000 balers. *Page 3 
Economy/Ohio contends that Brown failed to present sufficient evidence of a continuation of enterprise to establish successor liability, and, therefore, that the trial court properly entered a judgment in its favor.
As a general rule, the transferee/purchasing corporation is not liable for the debts and liabilities of the transferor/seller corporation. Matrix-Churchill v. Springsteen,461 So.2d 782 (Ala. 1984). In Andrews v. John E. Smith's SonsCo., 369 So.2d 781, 785 (Ala. 1979), this Court stated:
 "As a general rule, where one company sells or otherwise transfers all its assets to another company, the transferee is not liable for the debts and liabilities of the transferor unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor."
369 So.2d at 785. (Citations omitted.) See, Clardy v. Sanders,551 So.2d 1057 (Ala. 1989), cert. denied, 493 U.S. 885,110 S.Ct. 230, 107 L.Ed.2d 178 (1989).
Brown does not contend that Economy/Ohio should be held subject to successor liability under alternative (1), (2), or (3) of the four alternatives set out in Andrews, nor is there substantial evidence to support the imposition of successor liability under those alternatives. Rather, Brown bases his argument for the imposition of successor liability on alternative (4) — he contends that Economy/Ohio, as the transferee corporation, is a mere continuation of Amhoist, as the transferor.
In Turner v. Wean United, Inc., 531 So.2d 827, 830-31 (Ala. 1988) (quoting Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873, 883-84 (1976)), this Court addressed alternative (4) (that "the transferee corporation is a mere continuation of the transferor"); there we referred to it as the "continuity of the enterprise test." Under that test, Economy/Ohio would be a mere continuation of Amhoist if there is substantial evidence of each of the following factors:
 "1) There was basic continuity of the enterprise of the seller corporation, including, apparently, a retention of key personnel, assets, general business operations and even the [seller's] name.
 "2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation.
 "3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation.
 "4) The purchasing corporation held itself out to the world as the effective continuation of the seller corporation."
531 So.2d at 830. See, also Pietz v. Orthopedic Equipment Co.,562 So.2d 152 (Ala. 1989).
Economy/Ohio made a prima facie showing that it was not subject to the imposition of liability under the "continuity of the enterprise test." The burden then shifted to Brown to rebut that showing by substantial evidence. Whereas Brown may have presented substantial evidence of the first factor of the "continuity of the enterprise test," and although he did present substantial evidence of the fourth factor of that test, he failed to present any evidence of the second and third factors. These factors are to be considered in the conjunctive, not in the alternative. Therefore, under the facts of this case, we hold that the evidence presented by Brown was insufficient to create a genuine issue of material fact as to whether Economy/Ohio was a successor in interest to Amhoist so as to impose liability on Economy/Ohio for the injuries Brown sustained. Therefore, we affirm Economy/Ohio's judgment.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Because this action was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence rule." Ala. Code 1975, § 12-21-12. (For a discussion of Rule 56, A.R.Civ.P, as it applies in the context of the "substantial evidence rule," and a definition of "substantial evidence," seeStafford v. Mississippi Valley Title Insurance Co., 569 So.2d 720
(Ala. 1990); West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870 (Ala. 1989).) *Page 4