[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendants, T. Gregory Ames, Steven Whitaker and Ames 
Whitaker, Architects, P.C., have moved for summary judgment as to all Counts against them in the Revised Complaint dated December 2, 1997, Counts One through Three and Counts Six through Eight, on the grounds that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. The primary grounds for the motion requires this court to consider what appears to be a matter of first impression in this state: Does the government contractor defense bar claims against a federal government contractor which arise from the contractor's performance of a public works project, rather than the procurement of military equipment.
Factual Background
The plaintiff, Judith Budrow, claims that she was injured when she fell from the jury box at the Federal Courthouse in Hartford, Connecticut while serving on jury duty. After unsuccessfully attempting to sue the United States of America[1], the plaintiff brought this action against the architects who were hired by the General Services Administration ("GSA"), a branch of the Federal Government, to assist in the construction of the courtroom in question. The plaintiff alleges that the architects were negligent in the design, planning, construction and supervision of construction of the steps and exit area of the jury box. CT Page 7194
The defendant, T. Gregory Ames, has submitted an affidavit in support of summary judgment from which the court can find the following facts. The defendants were retained by the GSA to provide architectural-engineering services in the renovation of the courthouse in Hartford. The GSA required the defendants to use the existing GSA designs for the courtroom in question and to comply with the 1989 Courts Design Guide. The defendants were also required to comply with the specifications for the jury box contained in the four drawings bearing the title "Administrative office of the U.S. courts." They were also required to use the government specifications as to the height of the risers of the jury box and the design of the jury box, including whether or not there were handrails constructed. The type of carpet was listed in the "room finish schedule" of the specifications, and "the Judge or designated Court Representative" was the only person allowed to make selections from that schedule. The finished jury seating and the courtroom in question in general conformed with the specifications set forth by the U.S. Government for this construction project and contained no dangers that were known to the defendant architects but which were not known to the U.S. government.
Discussion of Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted how that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81,595 A.2d 334 (1991); Lees v. Middlesex Ins. Co., 219 Conn. 644, 650,594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact;D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; Burnsv. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309,407 A.2d 971 (1978); Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party CT Page 7195 would be entitled to a directed verdict on the same facts. Batickv. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); New MilfordSavings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam,224 Conn. 524, 530, cert. denied, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993);Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1991).
In Boyle v. United Technologies Corp., 487 U.S. 500,108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the United States Supreme Court addressed the liability of United States government contractors to third persons under state tort law. Boyle was a wrongful death action that was brought against an independent government contractor after a military helicopter it had supplied crashed into the ocean and, due to the defective design of the escape hatch, a pilot drowned. The United States Supreme Court concluded that suppliers of military equipment must be protected from state tort liability for design defects under certain circumstances based on the "discretionary function" exemption of the Federal Tort Claims Act.
In holding that the contractor was immune from state law tort claims based on federal law preemption the Court considered areas which it had found to involve "uniquely federal interests": 1) the obligations to and rights of the United States under its contracts, which are governed exclusively by federal law and; 2) the civil liability of federal officials for actions taken in the course of their duty, the scope of which is controlled by federal law. The Court in Boyle stated:
 The present case involves an independent contractor performing its obligation under a procurement contract, rather than an official performing his duty as a federal employee, but there is obviously implicated the same interest in getting the Government's work done.
 We think the reasons for considering these closely related areas to be of "uniquely federal" interest apply as well to the civil liabilities arising out of the performance of federal procurement contracts. We have come close to holding as much. In Yearsley v. W. A. Ross Construction Co., 309 U.S. 18 (1940), we rejected an attempt by a landowner to hold a construction contractor liable CT Page 7196 under state law for the erosion of 95 acres caused by the contractor's work in constructing dikes for the Government. We said that "if [the] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." Id., at 20-21. The federal interest justifying this holding surely exists as much in procurement contracts as in performance contracts; we see no basis for a distinction.
487 U.S. at 505-506.
The Boyle Court relied on the Federal Tort Claims Act ("FTCA") in applying immunity to the government contractor:
 There is, however, a statutory provision that demonstrates the potential for, and suggests the outlines of, "significant conflict" between federal interests and state law in the context of Government procurement. In the FTCA, Congress authorized damages to be recovered against the United States for harm caused by the negligent or wrongful conduct of Government employees, to the extent that a private person would be liable under the law of the place where the conduct occurred. 28 U.S.C. § 1346(b). It excepted from this consent to suit, however,
 "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).
 We think that the selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function within the meaning of this provision. It often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness. And we are further of the view that permitting "second-guessing" of these judgments, see United States v. Varig Airlines, 467 U.S. 797, 814 (1984), through state tort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption. The financial burden of judgments against the contractors would ultimately be passed through, substantially if not totally, to the United States itself, since defense contractors will predictably raise their prices to cover, or to insure against, contingent liability for the Government-ordered designs. To put the point differently: It makes little sense to CT Page 7197 insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production. In sum, we are of the view that state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a "significant conflict" with federal policy and must be displaced.
487 U.S. at 511-512.
In Miller v. United Technologies Corp., 233 Conn. 732,660 A.2d 810 (1995), the Connecticut Supreme Court held that underBoyle the government contractor defense could apply in a case involving military equipment that the United States government had purchased for resale to a foreign government. The Miller case did not resolve the issue before this court because in it, as inBoyle, the contractor supplied military equipment. The following language does suggest that the Court recognized that the government contractor defense was not limited to military procurement contracts:
 The United States Supreme Court first recognized the government contractor defense in Yearsley v. W.A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), in which the court, relying on agency theory, barred suits against government contractors performing public works projects. The defense was eventually construed to cover product liability actions brought by United States government employees against independent government contractors. McKay v. Rockwell International Corp., 704 F.2d 444 (9th Cir. 1983), cert. denied, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); In re Agent Orange Product Liability Litigation, 534 F. Sup. 1046 (E.D.N Y 1982). These cases recognized the defense as an extension of the United States government's sovereign immunity from tort liability on claims brought by government employees who had been injured in the course of their employment. See Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152
(1950). Most recently, in Boyle v. United Technologies Corp., supra, 487 U.S. 500, the United States Supreme Court recognized that, under certain circumstances, the government contractor defense may preclude product liability actions for design defects brought by third parties against suppliers of military equipment.
 The government contractor defense is intended to protect the discretionary decisions of the United States government from CT Page 7198 judicial scrutiny and to permit the government to acquire from its independent contractors equipment of any specifications that it requires.
233 Conn. at 746-747.
There is a split of authority among the federal and state courts as to whether the government contractor defense is limited to military contracts. The following Courts have held that the defense is available to all manufacturers: Carley v. WheeledCoach, 991 F.2d 1117 (3rd Cir. 1993); Boruski v. U.S.,803 F.2d 1421, 1430 (7th Cir. 1986); Burgess v. Colorado Serum Co.772 F.2d 844, 846 (11th Cir. 1985); Vermeulen v. Superior Court ofAlameda County, 204 Cal.App.3d 1192, 251 Cal Rptr. 805, 809-810
(1988); Mc Dermott v. TENDUN Constructors, 211 N.J. Super. 196,511 A.2d 690, 696, cert. denied, 107 N.J. 43, 526 A.2d 134
(1986).
The following Courts have held that the defense is only available to manufacturers of military products: In re HawaiiFederal Asbestos Cases, 960 F.2d 806, 810-12 (9th Cir. 1992);Nielsen v. George Diamond Vogel Paint Co., 892 F.2d 1450, 1452-55
(9th Cir. 1990); Pietz v. Orthopedic Equip Co., 562 So.2d 152,155 (Ala. 1989) cert denied, 498 U.S. 823.
The Third Circuit Court of Appeals in Carley v. WheeledCoach, supra, provided a very well reasoned analysis of Boyle and concluded that the Supreme Court did not intend to limit the government contractor defense to suppliers of military equipment. In Carley an emergency medical technician was injured when an ambulance in which she was riding flipped over. The ambulance had been manufactured by the defendant pursuant to a contract with the United States, General Services Administration.
The Court in Carley stated:
 The Court [in Boyle] initially observed that a few areas involving uniquely federal interests are so committed to federal control by the Constitution and laws of the United States that state law is preempted and replaced, where necessary, by federal common law. Id. at 504, 108 S.Ct. at 2514. The Court identified two areas of unique federal concern: the obligations to and rights of the United States under its contracts, id. at 504-05, 108 S.Ct. at 2514 (citing United States v. Little Lake Misere Land Co., 412 U.S. 580, 592-94. . . . . (1973)), and the civil liability of federal officials for actions taken in the course of CT Page 7199 their duty, id. 487 U.S. at 505, 108 S.Ct. at 2514-15 (citing Westfall v. Erwin, 484 U.S. 292, 295 . . . (1988)). Though neither of these two lines of precedent involved a federal interest unique to the military, they provided the basis for judicial recognition of the government contractor defense. See id, 487 U.S. at 504-07, 108 S.Ct. at 2514-15.
991 F.2d 1119-1120.
The Court in Carley noted that the Boyle court relied heavily on Yearsley v. W.A. Ross Construction Co., 309 U.S. 18,60 S.Ct. 413, 84 L.Ed. 554 (1940). In Yearsley the Supreme Court stated "if [the Government's] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."309 U.S. at 20-21. The Carley Court reasoned that:
 This same rationale, which is equally applicable to military and nonmilitary contractors, underlies the modern government contractor defense. A private contractor who is compelled by a contact to perform an obligation for the United States should, in some circumstances, share the sovereign immunity of the United States. Though the contractor in Yearsley was an agent of the United States, while the contractor in Boyle and the present case were independent contractors, this distinction was not significant to the Court in Boyle. See 487 U.S. at 505-06, 108 S.Ct. at 2515. The Court regarded the federal interest in a performance contract in Yearsley as bing essentially the same as the federal interests in procurement contracts.
991 F.2d at 1120.
The court in Carley found that the strongest reason in Boyle
for making the government contractor defense available to all contractors is that the Boyle Court expressly rejected the Feres
doctrine as the basis of the defense. The Feres doctrine, based on Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 159,95 L.Ed 152 (1950), renders the U.S. immune from tort liability for injuries to servicemen arising out of or in the course of any activity incident to military service. The Court observed:
 Instead of relying on Feres, which applies only to torts arising out of military service, the Court instead relied on the discretionary function exception of the FTCA [Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1988)], which applies to government action in both military and nonmilitary matters. CT Page 7200
 The FTCA authorizes damages suits against the United States for injuries caused by the tortious conduct of any federal employee acting within the scope of his employment, to the same extent that a private person would be liable under state law. 28 U.S.C. § 1346(b) (1988). This waiver of sovereign immunity, however, does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. § 2680(a).
991 F.2d at 1121.
Finally, the Court in Carley found that all policy reasons advanced in Boyle to support the application of the government contractor defense were equally applicable to nonmilitary contractors, except combat effectiveness. See Boyle, supra, pp. 511-512. That is, application of the government contractor defense to nonmilitary contractors will prevent the financial burden of judgments against the contractors from being passed through to the United States itself.
The Court in Boyle said, "It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." Similarly, it makes little sense to insulate the Government against financial liability for the judgment that a particular courthouse design, or other public project design, is necessary when the Government supervises the building of the project, but not when it contracts for the supervision of the building of the project.
For the reasons set forth above this court holds that the government contractor defense applies to the defendants underYearsley, Boyle and Miller.
Both the plaintiff and the defendants have argued that if the government contractor defense does apply to the defendants, then before the defendants are deemed to be immune from liability under that defense, they must prove that they have satisfied the three-pronged test set forth in Boyle:
 Liability for design defects in military equipment cannot be imposed, CT Page 7201 pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.
487 U.S. at 512.
The defendants have submitted evidence that the GSA required them to use the existing GSA designs for the courtroom in question, to comply with the 1989 Courts Design Guide and to comply with the specifications for the jury box contained in the four drawings bearing the title "Administrative office of the U.S. courts." They were also required to use the government specifications as to the type of carpet used, the height of the risers of the jury box, and the design of the jury box, including whether or not there were handrails constructed. Defendants have also presented evidence that the finished jury seating and the courtroom in question in general conformed with the specifications set forth by the U.S. Government for this construction project and contained no dangers that were known to the defendant architects but which were not known to the U.S. government.
In her Memorandum in Opposition to Summary Judgment (p. 10) the plaintiff concedes that the first two prongs of the Boyle
test are not at issue. That is, the plaintiff does not dispute that the jury box design was approved by the government nor that the jury box as built conformed to the government design. The plaintiff contends that she has created an issue of fact as to the third prong of the Boyle test: that the defendants failed to warn the government about those design dangers which were known to the defendants, but not known to the government.
The plaintiff has submitted her own affidavit which states that the exiting path and steps from the jury box to the court did not contain handrails, carpeting, warning of the presence of a second step, or adequate lighting. If the jury box and exiting path and steps were built in conformance with the government's design, which the plaintiff concedes, then the conditions of which she complains were not unknown to the government, and her affidavit does not establish that the defendants failed to warn the government of dangers unknown to it. The plaintiff has also attached a report from Charles J. McSheffery, architect and engineer. This report is inadmissible because Mr. McSheffery has CT Page 7202 not sworn to its contents. However, even if the report had been submitted in an admissible form, it would be insufficient to defeat the defendants' claim that the jury box design contained no hidden dangers that were known to the architects, but unknown to the government. The report states, in essence, that the jury box design was defective because it failed to contain handrails. If such failure was, in fact, a "dangerous condition," then it was clearly known to the GSA designers.
For the foregoing reasons, summary judgment is granted as to Counts One, Two and Three and as to the derivative loss of consortium Counts Six, Seven and Eight on the grounds that the defendants are not liable under the circumstances of this case based on the government contractor defense.
By the court,
Aurigemma, J.